UNITED STATES of America, Appellee,

v.

Joseph M. McCRANE, Jr., Appellant.

No. 75–1643.

United States Court of Appeals, Third Circuit.

Argued Oct. 31, 1975.

Decided Dec. 18, 1975.

Edwin P. Rome, Thomas A. Bergstrom, Jerome R. Richter, Blank, Rome, Klaus & Comisky, Philadelphia, Pa., for appellant; J. Robert Lunney, Lunney & Crocco, New York City, of counsel.

John J. Barry, Bruce I. Goldstein, Mary-Anne T. Desmond, Asst. U. S. Attys., Jonathan L. Goldstein, U. S. Atty., Newark, N. J., for appellee.

Before GIBBONS, Circuit Judge, MARKEY,* Chief Judge of Court of Customs and Patent Appeals and WEIS, Circuit Judge.

## OPINION OF THE COURT

WEIS, Circuit Judge.

Letters written by the United States Attorney to prospective customers of a key government witness constituted *Brady* material which should have been disclosed to the defendant in this criminal case. The failure of the prosecution to do so requires a new trial on the affected counts. Convictions will be affirmed on other charges of aiding the preparation of false income tax returns by deducting political contributions as business expenses.

The defendant was convicted on four counts of violation of 26 U.S.C. § 7206(2), which in general proscribes aiding or advising preparation of fraudulent income tax returns.[1] At the conclusion of the government's case, the court dismissed a conspiracy charge and six substantive counts.

At the trial, there was testimony that the defendant solicited political contributions in the course of his duties as finance chairman for a gubernatorial candidate. Fictitious invoices for advertising services were issued in some instances to disguise the payments as business expenses which were then used as deduc-

---

* Sitting by designation.

1. The indictment was returned in the District of New Jersey. The first trial began on September 10, 1974, but the court declared a mistrial on September 19, 1974 because of preju-dicial publicity. A second trial began in New Jersey on October 21, 1974; however, on the defendant's motion for change of venue, the court transferred the case to the Middle District of Pennsylvania.

tions on the contributor's income tax returns. This arrangement was effected through the cooperation of Writers Associates, a small public relations firm which the defendant had engaged to assist in his fund raising efforts. In addition to its customary advertising services, Writers agreed to receive campaign donations and, on some occasions, bill contributors for work which had not been performed.

Count III of the indictment was directed at a $2,000.00 contribution which Hialeah Race Course, Inc. made after receipt of Writers' fictitious bills for advertising. Hialeah later deducted the amount on its 1969 Federal Income Tax return as a business expense.

Count IV charged that Trap Rock Industries, Inc. had given a contribution of $15,000.00 to the campaign after Writers Associates had sent invoices for advertising services not rendered. A witness testified that, in soliciting the funds, the defendant had offered to supply fictitious bills from a public relations firm so that Trap Rock could deduct the contributions as a business expense.

Counts X and XI were based on payments made by Bellante, Clauss, Miller & Nolan, Inc. on separate occasions. Lawrence Bellante, president of the company, testified that in June, 1969 the defendant asked for a campaign contribution. In the course of the conversation, McCrane said that the payment should be made to Bofinger-Kaplan Advertising, Inc. in order to secure a tax deduction. Bellante made a payment of $3,500.00 to Bofinger-Kaplan and deducted part from the corporate income tax.

A similar arrangement governed a $2,500.00 payment to Writers Associates.[2]

The defendant raises a number of diverse issues on appeal and we first address the most serious one, the withholding of *Brady* material.

E. Lawrence Bellante was a key government witness against the defendant. Without his testimony there could have been no conviction on Counts X and XI. The guilty verdicts on these two counts, of necessity, demonstrated the jury's acceptance of his credibility.

The trial concluded on December 11, 1974. Four days later, an article appeared in the New Brunswick *Home News* describing the manner in which Bellante had secured a contract to participate in the construction of a new sports stadium in New Jersey. Reporting on an interview with Bellante, the article said:

"Among those who have helped him, he said, is U.S. Atty. Jonathan Goldstein, who has written in his behalf."

The defense immediately brought the matter to the attention of the trial court which then conducted further inquiry. It was discovered that the U.S. Attorney's office had sent a number of letters describing Bellante's conduct in this case to various public and private organizations in New Jersey. The court then ordered production of the letters, eight in all. Six had been sent in the summer and fall of 1973, one in January of 1974, and the last one on January 31, 1975 (some six weeks after the trial concluded).[3] The letters, some of which were written at the request of Bellante's attorneys and others at the request of the

---

**2.** For accounts of other disguised contributions during the same campaign, see *United States v. Gross*, 511 F.2d 910 (3d Cir.), *cert. denied*, —— U.S. ——, 96 S.Ct. 266, 46 L.Ed.2d 249 (1975).

**3.** Seven of the letters were written before trial and one after trial but before the disposition of defendant's post-trial motions, as follows:

1. June 18, 1973 to John C. Kohl, Commissioner of the New Jersey Department of Transportation;
2. June 21, 1973 to John L. Swink, Senior Vice President and Treasurer of Rutgers University;

3. July 5, 1973 to the New Jersey Sports and Exposition Authority;
4. July 5, 1973 to Milton H. Gelzer, Esquire;
5. July 13, 1973 to Donald S. Howard, President of the Board of Education of the Borough of Rumson, New Jersey;
6. October 16, 1973 to William W. Watkin, Jr., Executive Director of the Delaware River Port Authority;
7. January 8, 1974 to Richard C. Walters, Assistant Counsel, Department of the Navy;
8. January 31, 1975 to Robert G. Donovan, President of the Pennsylvania Society of Professional Engineers (NE Chapter).

addressee, are substantially identical. The U.S. Attorney's office wrote that Bellante had been granted immunity and had cooperated with the grand jury. Included was the following paragraph:

"This office brings these facts to your attention for your consideration as to whether Bellante, Clauss, Miller & Nolan, Inc., should be barred from further bidding on state work. On previous occasions we have expressed our concern that individuals that cooperate with the United States Grand Jury pursuant to a grant of immunity should not be penalized for telling the truth. It is in this context that I bring Mr. Bellante's cooperation to your attention for your consideration in reaching a final determination of the matter before you. In the final analysis, this determination must be made by your office and we do not in any way intend to interfere with your discretion in this matter." [4]

In the trial court's view, the letters were no more than factual recitations of Bellante's status and the government

had been under no obligation to disclose the correspondence.[5]

The record of the proceedings before trial shows that, in January of 1974, the defendant moved for discovery of *inter alia* :

"[A]ll material known to the government . . . which is exculpatory in nature or favorable to the defendant, or may lead to the discovery of exculpatory material or material which may be used to impeach prosecution witnesses . . . ."

In reply, the government acknowledged its "continuing obligations" under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), to disclose any material that would exculpate the defendant or negate his guilt: "However, the Government does not know of any exculpatory material." At a hearing in April of 1974, the presiding judge, in ruling on discovery of *Brady* material, addressed the government attorney:

"Let me put it this way to you, . . . [i]f there is anything of a questionable nature, you should put it aside and let

4. The full text of a typical letter follows:

"June 18, 1973
Commissioner John C. Kohl
Department of Transportation
1035 Parkway Avenue
Trenton, New Jersey 08625
    Re: *United States v. Bellante, Clauss, Miller & Nolan, Inc., Cr. No. 345–73*
Dear Commissioner:
    I am in receipt of a letter dated June 13, 1973 from the attorneys who represent Bellante, Clauss, Miller & Nolan, Inc. They have advised me that your office will be conducting a hearing on June 21, 1973 relative to the standing of this corporation to bid on public contracts in the State of New Jersey.
    This is to advise that one of the principals of this firm, E. Lawrence Bellante, has been immunized by the United States District Court and has furnished valuable testimony to the United States Grand Jury that is currently investigating a scheme to defraud the United States in which contributors to the 1969 Cahill gubernatorial campaign were furnished false and fictitious invoices for non-existent services in order that these contributors could deduct their political contributions as ordinary and necessary business expenses. Mr. Bellante has cooperated fully with the United States

Grand Jury and has testified as to his participation in this scheme. Indictments have been returned against Joseph M. McCrane, Nelson G. Gross, as well as Bellante, Clauss, Miller & Nolan, Inc., all emanating from Mr. Bellante's testimony.
    This office brings these facts to your attention for your consideration as to whether Bellante, Clauss, Miller & Nolan, Inc., should be barred from further bidding on state work. On previous occasions we have expressed our concern that individuals that cooperate with the United States Grand Jury pursuant to a grant of immunity should not be penalized for telling the truth. It is in this context that I bring Mr. Bellante's cooperation to your attention for your consideration in reaching a final determination of the matter before you. In the final analysis, this determination must be made by your office and we do not in any way intend to interfere with your discretion in this matter.
    If there are any further questions that you may have, please do not hesitate to call me.
                    Very truly yours,"

5. The government does not contend that the defendant had any knowledge of these letters until the newspaper story was published. We assume, therefore, that he did not.

me review it in camera, and I'll decide."

■ Under *Brady v. Maryland, supra,* the suppression of material evidence by the government requires that a new trial be ordered regardless of good or bad faith on the part of the prosecution. *Giglio v. United States,* 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972), makes it clear that, when the reliability of a given witness is critical to a determination of guilt or innocence, non-disclosure of evidence affecting credibility falls within *Brady's* rule. *See also Napue v. Illinois,* 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959); ABA Standards, Discovery and Procedure Before Trial § 2.1 (1970); ABA Standards, the Prosecution Function and the Defense Function § 3.11 (1971).

■ A promise of preferential treatment given to a witness by the government is admissible for impeachment purposes. *United States v. Harris,* 498 F.2d 1164, 1169 (3d Cir. 1974); *United States v. Newman,* 490 F.2d 139, 146 (3d Cir. 1974).

■ However, not all impeachment matter must be disclosed; the obligation extends only to that which is material. Cases in this court have framed the test in terms of that which is reasonably likely to have changed the jury's judgment. *United States v. Harris, supra; United States ex rel. Dale v. Williams,* 459 F.2d

763 (3d Cir. 1972).[6] Consideration must be given to the witness' testimony, that is, whether it is merely corroborative, *United States ex rel. Dale v. Williams, supra* at 765, or essential, *Giglio v. United States,* 405 U.S. at 154–155, 92 S.Ct. 763.

■ Accordingly, the absence of the impeachment matter is material if the information which the government withholds tends to impair seriously the reliability of the only witness whose testimony carries the case to the jury.[7] In such circumstances, the failure to disclose goes to a matter reasonably likely to affect the judgment of the jury. *Giglio v. United States, supra.*

■ The district court reasoned that the government's failure to disclose did not deny the defendant's right to a fair trial because the letters were not "favorable" within the meaning of *Brady.* The letters were characterized as factual recitations which contained no evidence of any understanding between Bellante and the United States Attorney's office or expectation of favors in exchange for cooperation. We agree that this is a reasonable interpretation of the letters, and one which the jurors *might* have accepted. However, we cannot exclude the other inference, just as reasonable, that at least some of the jurors might have felt that the mere act of writing

---

**6.** The Court of Appeals for the Second Circuit applies a test which depends on whether the "suppression" of *Brady* material is deliberate or inadvertent. Judge Gibbons, sitting by designation, recently summarized the Second Circuit's position in *United States v. Hilton,* 521 F.2d 164, 166 (2d Cir. 1975):

"If the government deliberately suppresses evidence or ignores evidence of such high value that it could not have escaped its attention, a new trial is warranted if the evidence is merely material or favorable to the defense. But if the government's failure to disclose is inadvertent, a new trial is required only if there is a significant chance that this added item, developed by skilled counsel, could have induced a reasonable doubt in the minds of enough jurors to avoid a conviction."

*See United States v. Rosner,* 516 F.2d 269 (2d Cir.), *petition for cert. filed,* 44 U.S.L.W. 3207 (U.S. September 29, 1975) (No. 75–492); *United States v. Sperling,* 506 F.2d 1323, 1333 (2d Cir. 1974), *cert. denied,* 420 U.S. 962, 95 S.Ct. 1351, 43 L.Ed.2d 439 (1975); *United States v. Kahn,* 472 F.2d 272, 287 (2d Cir.), *cert. denied,* 411 U.S. 982, 93 S.Ct. 2270, 36 L.Ed.2d 958 (1973); *United States v. Miller,* 411 F.2d 825, 832 (2d Cir. 1969); *United States v. Keogh,* 391 F.2d 138, 147–148 (2d Cir. 1968).

The result we reach in this case would be the same under either our cases or those listed above.

**7.** At the conclusion of the prosecution's case, the court granted acquittal for each count where there was no evidence of communication between the defendant and the contributor. Bellante supplied the only such evidence as to Counts X and XI.

the letters was preferential treatment by the U.S. Attorney.

Although the letters were couched in neutral tones, cross-examination might have revealed whether they were, in fact, helpful to Bellante in securing or retaining profitable contracts for his firm. Presumably, there had been some discussion between the United States Attorney's office and Bellante or his attorneys before the letters were sent. The substance of those conversations might be important in evaluating Bellante's reliability as a witness.

The impact of impeachment evidence is usually affected by the atmosphere created by the direct examination. It is helpful to review the trial record in order to put the undisclosed information in the proper perspective.

The United States Attorney began his direct examination of Bellante by reminding him of his immunization and his continuing obligation to testify truthfully. At the outset, therefore, the jurors might have inferred that Bellante was a reluctant witness. This impression would have been fortified by the witness' statements on cross-examination that the tax deduction had been inadvertent on his part and that he had been friendly with the defendant. It is difficult to predict the reaction of the jury if, at that point, the letters written by the United States Attorney's office had been brought to their attention. The letters perhaps might have had no effect; but undeniably they could have shown that the witness, rather than being hostile to the prosecution, was in fact cooperative and financial self-interest was involved.

Of course, we do not pass upon the witness' credibility: that important task is reserved for the jury. The error here was the government's withholding of material which would have assisted the defendant in casting doubt on the credibility of a crucial witness against him.

Furthermore, were we to apply the test used in the Second Circuit, it would be pertinent to note that the government does not assert inadvertence. Indeed, it could not because the last of the letters written before trial was signed by the Assistant United States Attorney who actually tried the case. Accordingly, the trial was not one which owed its imperfection to negligence or inadvertence. To the contrary, this is a situation where the prosecution chose to ignore the sage admonition of the pretrial judge and took it upon itself to decide a serious legal question adversely to the defendant. To remedy the government's error, we must order a new trial on Counts X and XI.

The defendant has asserted a number of other grounds applicable to all counts:

1. The judgment of acquittal for conspiracy to violate 26 U.S.C. § 7206(2) precludes conviction for aiding and assisting others in violating 26 U.S.C. § 7206(2).

■ We find no merit to this contention. As the district court noted in its post-trial memorandum, the alleged conspiracy involved different people from those in the substantive counts. It is clear that failure to prove a conspiracy among A, B and C does not preclude a conviction on a count that A aided Y in committing a substantive offense. *See Nye & Nissen v. United States*, 336 U.S. 613, 619–620, 69 S.Ct. 766, 93 L.Ed. 919 (1949).

2. The indictment was improperly amended.

■ The substantive counts described the illegal activity and included the language: "Pursuant to the plan and purpose to commit the crime set forth in Count I [the conspiracy count] of this indictment . . . ." The trial judge correctly held that this phraseology was surplusage and did not include the challenged verbiage in his instruction to the jury. He committed no error in that respect. *See United States v. Musgrave*, 483 F.2d 327, 337 (5th Cir.), *cert. denied*, 414 U.S. 1023, 94 S.Ct. 447, 38 L.Ed.2d 315 (1973). The quoted language did not set forth an essential element of the crime, nor did its deletion affect the charges brought by the grand jury in

any substantial manner. *United States v. Gross*, 511 F.2d at 916; *United States v. Radowitz*, 507 F.2d 109, 112 (3d Cir. 1974); *United States v. Somers*, 496 F.2d 723 (3d Cir.), *cert. denied*, 419 U.S. 832, 95 S.Ct. 56, 42 L.Ed.2d 58 (1974); *United States v. DeCavalcante*, 440 F.2d 1264, 1271 (3d Cir. 1971).

■ The defense contends that the indictment was "amended" by preparing for the jury's use an edited version not containing the phraseology quoted or the counts which had been dismissed. This contention has no basis. The document which was sent out with the jury was not *the* indictment; it was simply a memorandum to aid the jury's deliberation. The mere preparation of a redacted version or a "clean copy" of an indictment is not an amendment. *See Dawson v. United States*, 516 F.2d 796, 801 (9th Cir. 1975); *United States v. Cirami*, 510 F.2d 69 (2d Cir.), *cert. denied*, 421 U.S. 964, 95 S.Ct. 1952, 44 L.Ed.2d 451 (1975); *United States v. Bryant*, 153 U.S.App.D.C. 72, 471 F.2d 1040 (1972), *cert. denied*, 409 U.S. 1112, 93 S.Ct. 923, 34 L.Ed.2d 693 (1973).

3. The defendant could not be prosecuted under § 7206(2) since that section is applicable only to accountants, bookkeepers, tax consultants, or preparers who actually prepare the tax returns.

■ While the defendant cites a litany of cases where persons in those categories were convicted, that compilation does not establish the narrow reading of the statute which he urges.

The defendant was convicted on evidence that he assisted certain taxpayers by providing false invoices as documentation of business expenses. He also advised and counseled the contributors to use these expenditures as tax deductions. His activities fall within the statutory proscription of conduct by an individual who "willfully aids or assists in, or procures, counsels or advises the preparation . . . of a return . . . which is fraudulent or is false as to any material matter." *See United States v. Haimow-*

*itz*, 404 F.2d 38 (2d Cir. 1968); *Rubenstein v. United States*, 214 F.2d 667 (10th Cir. 1954).

4. Insufficiency of the evidence.

■ Count III charged that the Hialeah Race Course, Inc. income tax return showed $2,000.00 paid for services purchased from Writers Associates when that sum, in fact, was a non-deductible political contribution. The evidence established that the defendant, who was then vice president of the corporation which controlled Hialeah, gave express instructions for the payment.

The evidence under Count IV was that the defendant told an official of Trap Rock Industries that he would furnish fictitious invoices to facilitate the deduction of the political contribution as a business expense. The deduction was in fact taken in Trap Rock's return in 1969.

The district court reviewed the evidence at length and in detail. We agree with its conclusion that the evidence was sufficient to support conviction. Since Counts X and XI must be retried, we will not pass upon the evidence as to them.

5. Errors in the charge.

■ Before the court began its instructions to the jury, the defense asked the trial judge to admonish the jury about the counts which had been dismissed and the evidence pertaining to them. The court charged:

"In deciding this case, members of the jury, you are to consider each count individually. The fact that the Government has proved its case beyond a reasonable doubt or has failed to prove its case beyond a reasonable doubt as to any single count does not in and of itself require a finding of either guilty or innocent as to any other count. It is your obligation and duty to consider each count individually and arrive at a separate finding of guilty or innocent as to each of the four counts in the indictment. And as to each count you are to determine guilt or innocence only on the evidence

that applies to that particular count."

Defendant took no exception to that part of the charge nor did he request any amplification of the instruction. Accordingly, we find no reversible error.

■ Defendant also contends that the court erred in its charge on knowledge and willfulness on the part of the defendant. We have reviewed the charge and find it adequate.

■ Finally, the defendant asserts that, because the court had ruled that the size of the tax deductions was not material, his closing argument was unduly limited on that issue. We find no reversible error in this respect.

■ After the briefs were filed and a few days before argument was scheduled in this case, the defendant filed a motion for leave to enlarge the record or, in the alternative, for a remand to the district court for an evidentiary hearing. In support of the motion, he stated that on October 15, 1975 a grand jury returned an indictment against the former president of Trap Rock, including a count reciting the filing of a false corporate tax return in 1969.

One of the defenses to Count IV was that the defendant McCrane had not induced Trap Rock to deduct political contributions because it was well familiar with the practice and had followed it on numerous other occasions. According to the defendant's motion, the latest indictment suggests that the government was aware of tax fraud on the part of Trap Rock independent of the activity involving this defendant. The defense asserts, therefore, that the government's knowledge of Trap Rock's alleged fraud was *Brady* material which was not disclosed before the trial.

We deny the motion. Since these allegations are relevant to the establishment of cause for a new trial, the motion should be filed in the district court. *See* 2 C. Wright, Federal Practice and Procedure § 557 (1969). Our denial is without prejudice to any action which the defendant may wish to take in the district court. We do not pass upon and, hence, express no opinion on the merits of the motion.

The conviction on Counts X and XI will be vacated and these matters remanded for a new trial. The convictions on Counts III and IV are affirmed.