**UNITED STATES of America**

v.

**Joseph M. McCRANE.**

**Crim. No. 74–180.**

United States District Court,
M. D. Pennsylvania.

Aug. 8, 1977.

Jonathan L. Goldstein, U. S. Atty., Newark, N. J., for plaintiff.

Thomas A. Bergstrom, Philadelphia, Pa., for defendant.

## MEMORANDUM

NEALON, Chief Judge.

On May 24, 1973, an eleven-count indictment was returned against the defendant, Joseph McCrane, alleging violations of 18 U.S.C. § 2, 18 U.S.C. § 371, and 26 U.S.C. § 7206(2) during the time he was finance chairman for the 1969 New Jersey gubernatorial campaign of William T. Cahill. Following several pretrial motions, defendant's trial commenced on September 10, 1974, before the Honorable Lawrence A. Whipple in the District of New Jersey. On defendant's motion, that trial ended in a mistrial on September 19, because of the effect of prejudicial publicity on the jurors. Thereafter, a second trial commenced in the District of New Jersey on October 21, 1974, but that also ended prematurely when the Court granted defendant's motion for a change of venue on October 25, and venue was transferred to the Middle District of Pennsylvania. Pursuant to the change of venue, trial commenced in this Court on December 2, 1974. At the conclusion of the government's case, the defendant's motion for judgment of acquittal was granted with respect to seven of the counts charged in the indictment. Thereafter, on December 11, the jury convicted the defendant on the four remaining counts of aiding and assisting the taxpayers therein named in the preparation of federal income tax returns that were false and fraudulent as to a material matter in violation of 26 U.S.C. 7206(2).[1]

Defendant was found guilty on Counts III, IV, X and XI. Generally, each count charged that defendant violated § 7206 by furnishing fictitious invoices to certain corporate taxpayers so that they could disguise their contributions to the Cahill campaign as business expenses and thereby gain a tax

1. This statute provides in pertinent part that whoever "willfully aids or assists in, or procures, counsels, or advises the preparation . . . of a return . . . which is fraudulent or false as to any material matter" shall be guilty of a crime against the United States.

deduction on their income tax returns. The arrangement was effected through the co-operation of Writers Associates and Bofinger-Kaplan Advertising, Inc., two public relations firms which at defendant's request, issued the fictitious invoices involved.

Count III of the indictment involved two payments of $1,000 each from Hialeah Race Track to Writers Associates which were made after Hialeah received invoices from Writers on May 9, 1969, and August 7, 1969, for advertising services. Richard H. Smith, President of Writers, testified that he was instructed by defendant to send the false invoices to Hialeah in order to obtain "seed money" for the Cahill Committee and that the money was used to pay campaign expenses. William C. Fisher, Treasurer of Hialeah, testified that defendant's father-in-law, Eugene Mori, was President of both Hialeah and Garden State Race Tracks; that Garden State owned a controlling interest in Hialeah; that defendant was General Manager and Vice President of Garden State where the witness worked for him as Assistant to the Treasurer; that defendant instructed him in his capacity as Hialeah's Treasurer to pay both invoices even though Writers had performed no services for Hialeah; and that these payments were deducted from Hialeah's 1969 tax return as business expenses.

Count IV charged that Trap Rock Industries, Inc., had given a contribution of $15,000.00 to the campaign after Writers Associates had sent invoices for advertising services not rendered. David Mendelson, the General Manager of Trap Rock, testified that, in soliciting the funds, the defendant had offered to supply fictitious bills from a public relations firm so that Trap Rock could disguise the contributions as a business expense on its tax return and thereby pay the campaign contribution "with 50-cent dollars."

Counts X and XI were based on payments made by Bellante, Clauss, Miller & Nolan, Inc., on separate occasions. E. Lawrence Bellante, president of the company,

testified that in June 1969, the defendant asked for a campaign contribution. In the course of the conversation, McCrane said that the payment should be made to Bofinger-Kaplan Advertising, Inc., in order to secure a tax deduction. Bellante made a payment of $3,500.00 to Bofinger-Kaplan and deducted part[2] from the corporate income tax. A similar arrangement governed a $2,500.00 payment to Writers Associates on October 27, 1969.

On December 31, 1974, defendant filed motions for judgment of acquittal and for a new trial. The Court denied these motions and thereafter on May 21, 1975, sentenced defendant to three years probation and ordered him to pay a fine of $5,000 on each count. Following the judgment of sentence, defendant appealed to the United States Court of Appeals for the Third Circuit.

On December 18, 1975, the Court of Appeals affirmed defendant's conviction on Counts III and IV, but vacated and remanded for a new trial the convictions on Counts X and XI for failure to comply with *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). *See United States v. McCrane*, 527 F.2d 906 (3d Cir. 1975) (McCrane I). On June 30, 1976, the Supreme Court vacated the judgment of the Court of Appeals and ordered reconsideration in light of *United States v. Agurs*, 427 U.S. 96, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976). *See United States v. McCrane*, 427 U.S. 909, 96 S.Ct. 3197, 49 L.Ed.2d 1202 (1976). After further consideration, the Court of Appeals affirmed its previous order on November 22, 1976. *See United States v. McCrane*, 547 F.2d 204 (3d Cir. 1976) (McCrane II).

Now before the Court is defendant's motion for a new trial on Count IV (Trap Rock) on the basis of newly discovered evidence. Defendant attempted to raise this issue before the Court of Appeals but was directed by the Court to first raise it here. *See United States v. McCrane*, 527 F.2d at 914.

---

**2.** Sixty percent of the $3,500 was deducted on the corporation's books and forty percent was

deducted on the books of a closely related partnership.

As has been noted, Count IV of the indictment alleged, and defendant was convicted of, aiding and assisting Trap Rock Industries, Inc. in fraudulently deducting a $15,000 contribution as an ordinary and necessary business expense. Defendant now alleges that before and during his trial the government knew that Trap Rock had also evaded tax using a similar scheme by fraudulently deducting the $75,000 cost of a pleasure boat as a business-related dredging operation expense.[3] Defendant argues that this information should have been produced and provided to him under *Brady v. Maryland*, as it "suggests that Trap Rock was capable of and did commit tax fraud without the aid or assistance of the defendant." Defendant further asserts that this information shows that Trap Rock was prepared to deduct the Cahill campaign contributions with or without his assistance and, in fact, did so. In any event, defendant also feels that this information could have been used to impeach Mendelson's testimony that defendant suggested the fictitious scheme for the purpose of evading tax liability as set forth in Count IV.[4] For purposes of this motion the Court will consider these factual allegations made by the defendant as true and proceed accordingly.

In *United States v. Agurs*, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976), the Supreme Court discussed a prosecutor's obligation to disclose evidence that would be material to the defense. The Court employed three distinct categories of cases to delineate the due process issues in this area. The first category involves prosecutorial tolerance of perjured testimony for which a conviction must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury. *United States v. Agurs*, 427 U.S. at 103–104, 96 S.Ct. 2392. "This strict standard is applicable because the truth-seeking function of the trial has been compromised and prosecutorial misconduct was present." *United States v. McCrane*, 547 F.2d at 205.

The second category, typified by *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), involves prosecutorial suppression, after a specific request, of evidence favorable to the defense on either guilt or punishment, *United States v. Agurs*, 427 U.S. at 104–107, 96 S.Ct. 2392. In such cases, a new trial is required if the requested evidence was material and "implicit in the requirement of materiality is a concern that the suppressed evidence might have affected the outcome of the trial." *United States v. Agurs*, 427 U.S. at 104, 96 S.Ct. at 2398.

The third category, typified by the *Agurs* facts, involves a situation where there has been no specific request for undisclosed evidence and the prosecution has failed to voluntarily disclose favorable evidence. *Agurs* states that such a nondisclosure is a constitutional error only when the undisclosed evidence creates a reasonable doubt about defendant's guilt which did not otherwise exist. *United States v. Agurs*, 427 U.S. at 112–113, 96 S.Ct. 2392.

There is no suggestion that this case involves any prosecutorial tolerance of perjured testimony. Accordingly, the first question for the Court to determine is whether the request made by the defense is considered to fall in the specific or nonspecific category. *See United States v. McCrane*, 547 F.2d at 207.

In February of 1974, the defendant filed a motion covering a number of pretrial matters, among which were various discovery requests. Included in the motion was a request for material which could be used to impeach prosecution witnesses including, but not limited to, any standard

---

**3.** This information surfaced as a result of a four-count indictment returned on October 15, 1975, charging Michael Stavola, President of Trap Rock Industries, Inc., with filing and causing to be filed with the Internal Revenue Service false and fraudulent tax returns for Trap Rock for the 1969 and 1970 fiscal years.

**4.** Mendelson, as a corporate officer, signed the 1969 corporate tax returns of Trap Rock, Inc. The Court of Appeals erroneously stated that "Mendelson furnished the tie-in testimony on Counts III and IV," *United States v. McCrane*, 547 F.2d at 206. In fact, Mendelson offered no testimony at all concerning Count III.

used in declining prosecution of government witnesses in similar circumstances.

In *McCrane II*, the Third Circuit considered the *Agurs* implications of certain letters written by the United States Attorney on behalf of E. Lawrence Bellante, a key prosecution witness, to various public and private organizations in the State of New Jersey, explaining the relationship between the United States Attorney's office and Bellante and his architectural and engineering firm, Bellante, Clauss, Miller and Nolan, Inc., which at the time was under consideration for architectural contracts in connection with various public projects in the State of New Jersey. In each instance, the letters advised that Bellante had received immunity and has cooperated with the grand jury investigating the tax fraud scheme underlying this case by furnishing valuable testimony to that body; that as a result of his testimony, indictments have been returned against Joseph McCrane and the firm of Bellante, Clauss, Miller and Nolan; and finally that, though it was concerned about the possibility of Bellante being penalized because of such facts, the United States Attorney took no position with respect to what action the addressees should take as a result of being informed of the facts. The Court of Appeals determined that these letters were specifically requested under *Agurs* because "it requires no profound intellectual analysis to perceive that the defense was seeking material that might provide a basis for a claim of prosecutorial favoritism or preferential treatment of government witnesses." *United States v. McCrane*, 547 F.2d at 207.

Unlike the situation in *McCrane II*, however, there is nothing in the motion that would give the government notice of the specific nature of the evidence now alleged to have been withheld. It includes no mention of Trap Rock or its President, Michael M. Stavola, or any indication that defendant was seeking information concerning

other instances of fraudulent tax avoidance. A request for material which could be used to impeach prosecution witnesses is similar to "all *Brady* material" or "anything exculpatory" which the *Agurs* court said ". . . really gives the prosecutor no better notice than if no request is made." *See United States v. Agurs*, 427 U.S. at 106–07, 96 S.Ct. at 2399. Moreover, Mendelson and not Stavola was the key government witness. The cases which have considered request for all exculpatory material have uniformly held that they are general and should be so judged. *Id.*; *Moynahan v. Manson*, 419 F.Supp. 1139, 1145 (D.Conn.1971). It follows naturally then that a general request for impeachment evidence also falls within this category.

■ The Court also feels that common sense dictates this conclusion. Considering the broad latitude given defense counsel in impeaching prosecution witnesses and the corresponding enormous amount of material that could arguably be so used, the Court does not feel that a mere request for impeachment evidence should be sufficient to put the government to the burdensome task of reviewing its entire file and related files for any evidence that might ultimately have some impeachment value.

■■ For these reasons, therefore, the Court feels that this case falls within the third *Agurs* category and applying the applicable standard is satisfied that a new trial is not required. The Court does not feel that this evidence raises a reasonable doubt because the case against defendant was strong on this count and the potential effect of this new evidence on the jury would have been negligible. The Court allowed extensive cross-examination as to other instances where Trap Rock may have improperly deducted political contributions and specifically charged the jury that it could consider them in evaluating Mendelson's testimony.[5] In addition, the United

---

5. The Court charged the jury as follows:

"And similarly, members of the jury, I allowed into evidence payments made by Trap Rock starting in April, 1969 for political campaign purposes of other candidates, which Trap Rock disguised on its income tax returns as

advertising expenses, which you may consider in evaluating David Mendelson's testimony and in determining whether or not this defendant did aid and assist Trap Rock in disguising the Cahill contributions as an advertising expense." N.T. Vol. VIII, 34 & 35.

States Attorney admitted in his closing statement that this was not the only time that Trap Rock had participated in this kind of tax avoidance scheme. Furthermore, the fact that Trap Rock was ready, willing and able to claim a fraudulent deduction does not detract from the charge here that defendant suggested this particular instance of tax evasion and aided and assisted in it by providing false invoices to enable Trap Rock to deduct the contributions as a business expense. A false invoice from an outside source to assist in the deduction of a political contribution as a business expense involves a different *modus operandi* from that where a corporate taxpayer lists the purchase of a pleasure craft as a dredging expense.

The Court recognizes that the Court of Appeals held *obiter* in *McCrane II* that the Bellante letters created a reasonable doubt under the third *Agurs* test. As has been noted, *McCrane II* involved Counts X and XI and the similar claim that defendant arranged to have Bofinger-Kaplan and Writers Associates submit fake invoices in order that contributors might be able to deduct them as a business expense. The testimony that tied in McCrane to this scheme was furnished by E. Lawrence Bellante and was in the language of the Third Circuit "equivocal." In addition, the impact of the evidence withheld was enhanced by the fact that it raised an inference of prosecutorial favoritism towards the witness. *See United States v. McCrane*, 547 F.2d at 207.

In the present case, however, the testimony which tied defendant into the fraudulent tax scheme was provided by David Mendelson and was anything but equivocal. As previously noted, Mendelson testified explicitly that defendant advised him and Michael Stavola, the President of Trap Rock Industries, that in order to make it easier for them to contribute, he would have false invoices sent to them so they could deduct the disguised contributions as business expenses, thereby using "50 cent dollars." Furthermore, impeachment evidence al-

legedly withheld in this case does not tend to show preferential treatment of the witness by the prosecutor and, accordingly, would not give rise to an inference that the witness tailored his testimony to curry favor with the government. This factor is of special importance when it is considered that all of the reported cases which have granted relief on the basis of impeachment evidence under the third *Agurs* test have involved evidence of either threats to prosecute or promises of leniency by the government. *See United States v. Sutton*, 542 F.2d 1239 (4th Cir. 1976); *Boone v. Paderick*, 541 F.2d 447 (4th Cir. 1976); *United States ex rel. Annunziato v. Manson*, 425 F.Supp. 1272 (D.Conn.1977); *Kircheis v. Long*, 425 F.Supp. 505 (D.Ala. 1976); *Moynahan v. Manson*, 419 F.Supp. 1139 (D.Conn.1976); *cf. United States v. McCrane*, 547 F.2d at 207. The information allegedly suppressed here concerned Stavola's indictment for filing and causing the filing of fraudulent tax returns. While this information might have some value in impeaching Mendelson, its effect would be merely cumulative in light of the other improper deductions which the government freely admitted and about which the witness had been thoroughly cross-examined. For these reasons, therefore, the Court concludes that this information does not have the impeachment value ascribed to the Bellante letters and that the dictum in *McCrane II* which held that the Bellante letters would have raised a reasonable doubt does not require a similar conclusion in this instance.

As has been noted, the Court is convinced that defendant did not make a specific request for the evidence which is the subject of the motion. Assuming *arguendo*, however, that the request could be construed as being specific under the circumstances, the Court still believes that a new trial is not warranted. The proof against defendant on this count was very strong. Mendelson testified specifically that defendant devised the tax avoidance scheme and that he informed him and Stavola that it would en-

able Trap Rock to make the contribution using "50 cent dollars." Moreover, the "new" evidence involves a different *modus operandi* from the crime charged here and does not establish the potential bias of Mendelson or raise the spectre of prosecutorial favoritism towards him. In addition, as previously stated, the Court allowed extensive cross-examination as to other instances where Trap Rock may have deducted political contributions as business expenses and the United States Attorney admitted in his closing argument that this was not the only time that Trap Rock was involved in this type of tax avoidance scheme. *Agurs* recognized that there is a significant practical difference between the pretrial decision of the prosecutor and the post-trial decision of the trial judge. After presiding over this trial and hearing all of the evidence, the Court is satisfied that the failure to apprise defense counsel of the improper dredging operation deduction by Trap Rock would not have affected the outcome of the case and did not constitute a denial of defendant's right to a fair trial.