**UNITED STATES of America**

v.

**Joseph M. McCRANE, Jr., Appellant.**

**No. 77–2169.**

United States Court of Appeals,
Third Circuit.

Argued Feb. 23, 1978.
Decided April 17, 1978.

Thomas A. Bergstrom, Philadelphia, Pa., for appellant.

Robert J. Del Tufo, U. S. Atty., Ralph A. Jacobs, Asst. U. S. Atty., Newark, N. J., for appellee.

Before ADAMS and HIGGINBOTHAM, Circuit Judges, and BECHTLE, District Judge.[*]

## OPINION OF THE COURT

BECHTLE, District Judge.

In this appeal from the District Court's denial of his Fed.R.Crim.P. 33 motion for a new trial on grounds of newly discovered evidence,[1] we must determine whether defendant Joseph M. McCrane, Jr. ("McCrane"), was deprived of a fair trial when the Government failed to disclose evidence which allegedly would have impeached the Government's key witness and supported McCrane's theory of innocence. For the reasons stated below, we will affirm.[2]

The facts giving rise to this appeal are as follows: On May 24, 1973, McCrane was charged in an eleven-count indictment with having violated 18 U.S.C. §§ 371 and 372 and 26 U.S.C. § 7206(2) while serving as finance chairman for the 1969 New Jersey gubernatorial campaign of William T. Cahill.[3] At the close of the Government's case, seven of the eleven counts of the indictment were dismissed pursuant to Fed. R.Crim.P. 29(a). On December 11, 1974, McCrane was convicted by a jury on the remaining four counts; namely, counts III, IV, X and XI. Count IV of the indictment, which is the subject of this appeal, charged McCrane with aiding and assisting Trap Rock Industries, Inc. ("Trap Rock"), in pre-

---

\* Honorable Louis C. Bechtle, United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

1. The District Court's opinion is reported at 436 F.Supp. 760 (M.D.Pa.1977).

2. Because we have determined that the other issues raised by McCrane on appeal are without merit, we need not address them.

3. The prior history of this case is reported in *United States v. McCrane*, 527 F.2d 906 (3d Cir. 1975), *vacated*, 427 U.S. 909, 96 S.Ct. 3197, 49 L.Ed.2d 1202 (1976), *aff'd on remand*, 547 F.2d 204 (1976) (per curiam).

paring and presenting to the District Director of Internal Revenue for the Internal Revenue District of New Jersey a 1969 United States corporate income tax return for the fiscal year ending February 28, 1970 ("1969 tax return"), which was false and fraudulent as to a material matter, in violation of 26 U.S.C. § 7206(2). The Government's theory was that McCrane had aided and assisted Trap Rock's preparation of its 1969 tax return by furnishing fictitious invoices from the public relations firm of Writers Associates, Inc. ("Writers"), which enabled Trap Rock to disguise political contributions as business expenses and, subsequently, to deduct those contributions as ordinary and necessary business expenses on its 1969 tax return. On September 5, 1974, shortly before McCrane's trial began, Trap Rock pleaded guilty to a violation of 26 U.S.C. § 7206(1) in connection with the matters charged in count IV of the McCrane indictment.

At McCrane's trial, the Government's key witness, David Mendelson ("Mendelson"), a former officer and employee of Trap Rock, testified that he had attended a meeting in 1969 with, among others, McCrane and Michael Stavola ("Stavola"), former President of Trap Rock, for the purpose of discussing a contribution by Trap Rock to the Cahill campaign. Mendelson further testified that, at that meeting, McCrane offered to supply Stavola with fictitious invoices from a public relations firm so that Trap Rock could deduct its political contributions as business expenses on its corporate income tax return. Mendelson also testified that, after Trap Rock decided upon a contribution of $15,000, he received three invoices from Writers, each of which stated that professional services had been rendered to Trap Rock by Writers in the amount of $5,000 and that he then had two checks issued from Trap Rock to Writers in the amounts of $5,000 and $10,000, respectively.

Suzanne Miller ("Miller"), a Writers employee, corroborated Mendelson's testimony. Miller testified that she had prepared the three invoices at McCrane's direction, that they were fictitious and that the $15,000 received by Writers from Trap Rock benefited the Cahill campaign.

On cross-examination of Mendelson, McCrane attempted to establish that Trap Rock had, as a corporate entity, committed sizable tax fraud by means of a fictitious invoice scheme both prior to and subsequent to its association with McCrane. During this cross-examination, the District Court directed the Government to produce any evidence relevant to this issue. The Government, in response, requested an *ex parte* hearing to explain its reasons for not wishing to disclose this information. At the *ex parte* hearing, which was held *in camera* on December 6, 1974, the Government revealed that, not only had Trap Rock previously deducted political contributions as business expenses on its corporate income tax returns by employing fictitious invoices obtained from three public relations firms other than Writers, but also that Stavola, as Trap Rock's President, was currently under investigation by a Federal Grand Jury in New Jersey for allegedly having also used a fictitious invoice to deduct the cost of a pleasure boat as a business expense on Trap Rock's 1969 tax return.[4]

Subsequent to the *ex parte* hearing, counsel stipulated that, on at least three other occasions, Trap Rock had obtained fictitious invoices from three public relations firms other than Writers to assist it in disguising political contributions as business expenses, and that none of these incidents related to McCrane or the Cahill campaign. McCrane introduced invoices and records of these three public relations firms in evidence and cross-examined Mendelson on the invoices, records and stipulation. In his closing argument, the Government attorney conceded

4. On October 15, 1975, a Federal Grand Jury sitting in Newark, New Jersey, indicted Stavola on four counts of criminal tax evasion. Two of the four counts charged Stavola with having evaded $75,000 in corporate income tax on Trap Rock's 1969 corporate income tax return by deducting the cost of a pleasure craft as a business expense. On November 25, 1975, Stavola pleaded guilty to Count IV of the indictment, and the remaining counts were dismissed on motion of the Government.

that Trap Rock had disguised political contributions as business expenses in situations unrelated to the one involving McCrane.

In this appeal, McCrane argues that the Government violated *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and *United States v. Agurs,* 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976), when it failed to disclose evidence of the Federal Grand Jury investigation of Stavola in his capacity as President of Trap Rock. McCrane argues that the Government's failure to disclose this evidence deprived him of a fair trial because it related directly to the issue of his guilt or innocence in that it would have not only demonstrated to the jury that Trap Rock had been engaged in sizable tax fraud, but also impeached Mendelson's credibility. By failing to disclose this information, McCrane argues, the Government led the jury to believe that Trap Rock would not have been involved in tax fraud but for McCrane's involvement. We disagree.

■ In *United States v. Agurs, supra,* the Supreme Court discussed the issue of the prosecutor's obligation to disclose information material to the defense, and outlined three situations in which the rule of *Brady v. Maryland, supra,* applies. In the first situation, the defendant is deemed to have been denied a fair trial when the prosecutor knew, or should have known, that his case included perjured testimony. *United States v. Agurs, supra,* 427 U.S. at 103–104, 96 S.Ct. 2392. In the second situation, characterized by *Brady,* a new trial is required where the prosecutor suppresses, after a specific request, evidence material to the guilt or innocence of the defendant. *United States v. Agurs, supra,* 427 U.S. at 104–106, 96 S.Ct. 2392. Implicit in the concept of "materiality" is a ". . . concern that the suppressed evidence might have affected the outcome of the trial." *Id.* at 104, 96 S.Ct. at 2398. The third situation, typified by *Agurs,* is where the prosecutor fails to disclose, after a general re-

quest, evidence which is obviously exculpatory and which, when evaluated in the context of the entire case, creates a reasonable doubt that did not otherwise exist. *United States v. Agurs, supra,* 427 U.S. at 107–113, 96 S.Ct. 2392.

■ Since there is no suggestion in the record before us that the prosecutor's case included perjured testimony, it is clear that the first *Agurs* situation is not before us. The question before us, therefore, is whether the facts of this case bring it within either the second or the third *Agurs* situation. We hold that they do not. Irrespective of whether McCrane's pretrial discovery request is characterized as "specific" or "general,"[5] we find that the evidence of the Federal Grand Jury investigation of Stavola and Trap Rock was neither material to the guilt or innocence of McCrane, in the sense that it might have affected the outcome of the trial, nor obviously exculpatory and of a character which would have created a reasonable doubt that did not otherwise exist. Rather, the evidence of the Federal Grand Jury investigation would have been merely cumulative of the evidence, contained in the stipulation, invoices and records upon which McCrane cross-examined Mendelson at length, that Trap Rock had committed sizable tax fraud by means of a false invoice scheme both prior to and subsequent to its association with McCrane. We hold, therefore, that the prosecutor's failure to disclose this information did not deprive McCrane of a fair trial. Accordingly, the judgment of the district court will be affirmed.

---

5. The District Court determined that McCrane's pretrial discovery request had been general rather than specific and distinguished this Court's finding in *McCrane* that the request was specific. *United States v. McCrane, supra,* 436 F.Supp. at 764–768.