

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-16-2008

# Santillan v. Sharmouj

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-5167

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"Santillan v. Sharmouj" (2008). *2008 Decisions.* Paper 837.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/837

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

Nos. 06-5167/07-2952/07-2953/07-2954

_____

ANTONIO SANTILLAN

v.

NASSER SHARMOUJ and ZILA SHARMOUJ
Individually and d/b/a  Princesse Cash & Carry
and NASSAR SHARMOUJ, ZILA SHARMOUJ, SAMIRA SHARMOUJ,
Individually and d/b/a Target Tire and Battery,

Appellants No. 06-5167

_____

ANTONIO SANTILLAN,

Appellant Nos. 07-2952/2954

v.

NASSER SHARMOUJ; ZILA SHARMOUJ; SAMIRA SHARMOUJ

_____

ANTONIO SANTILLAN

v.

NASSER SHARMOUJ; ZILA SHARMOUJ; SAMIRA SHARMOUJ,

Appellants No. 07-2953

_____

*(continued)*

On Appeal From
The District Court of The Virgin Islands
(D.C. Civil Action No. 01-cv-00065)
District Judge: The Honorable Anne E. Thompson
_____

Argued May 6, 2008
_____

Before: RENDELL, FUENTES and CHAGARES, Circuit Judges.

(Filed: July 16, 2008)
_____

Wilfredo A. Geigel          **[ARGUED]**
P.O. Box 25749, Gallows Bay
Christiansted, St. Croix
United States Virgin Islands, 00824
*Counsel for Appellants*
*Nasser Sharmouj, Zila Sharmouj and Samira Sharmouj*

K. Glenda Cameron          **[ARGUED]**
Law Office of Rohn & Cameron
1101 King Street, Suite 2
Christiansted, St. Croix
United States Virgin Islands, 00820
*Counsel for Appellee*
*Antonio Santillan*

_____

OPINION OF THE COURT

_____

FUENTES, Circuit Judge.

This is an appeal from a jury verdict which determined that the negligent actions of

defendants Nasser Sharmouj ("Nasser") and Zila Sharmouj ("Zila") at a construction site

2

resulted in serious and permanent injuries to plaintiff Antonio Santillan ("Santillan"). The construction site was owned by Zila and overseen by Nasser. The principal issues on appeal are: (1) whether the jury properly awarded punitive damages against Zila and Nasser, and (2) whether the District Court properly denied certain of Santillan's requests for costs.[1] For the reasons below, we conclude that the jury correctly awarded punitive damages against both Zila and Nasser, and we remand the issue of costs to the District Court for further consideration.

## I.

As we write only for the parties, our recitation of the facts will be brief. Nasser was hired by Zila, his mother, to construct a building for a new business, the Target Tire & Battery ("Target"). The Target building was erected on land owned by Zila, who provided the financing for the project. Zila paid Nasser a salary and authorized him to oversee all aspects of the construction, including safety, permit application, employment and purchasing; she paid for the supplies and equipment, as well as for the business licenses and permits. Neither Zila nor Nasser paid for Workers' Compensation coverage

---

[1] Zila and Nasser raise a host of issues on appeal, arguing that there was insufficient evidence to support the jury verdict; that the District Court erred by allowing the jury to award economic damages to Santillan; that Santillan's economic and medical experts should have been excluded; and that the District Court erred by allowing the jury to award punitive damages against Nasser. Because we find all of these contentions to be without merit, we need not address them. See, e.g., United States v. Salemo, 61 F.3d 214, 216 (3d Cir. 1995); United States v. McCrane, 575 F.2d 58, 59 n.2 (3d Cir. 1978). As we uphold the jury's verdict, we need not reach evidentiary issues raised by Santillan on cross-appeal.

for the workers hired to construct the Target building.  Nasser was not licensed or qualified as a contractor pursuant to Virgin Islands law.

Zila was also the owner/operator of Princesse Cash & Carry ("Princesse"), a grocery store on the same property as the new Target building.  She worked there 14 hours a day, seven days a week, and was able to observe firsthand the construction of the Target building.

Santillan is an illegal alien from the Dominican Republic.  On June 2, 1999, Santillan fell and hit his head, resulting in serious injury.  There are two versions of how the accident occurred.  Santillan states that he had been hired by Nasser to work at the construction site several days prior to the accident.  On the date in question, he had been instructed to ride to the top of the building under construction in a forklift, without safety equipment.  While on the building, he was accidentally knocked off the roof by Nasser, who was moving plywood with the forklift.  Santillan fell two stories headfirst onto a concrete floor.

At trial, Nasser disputed Santillan's story.  He stated that Santillan was a known alcoholic who had shown up at the construction site the day of the incident looking for work; Nasser refused to hire him because of his drinking problem, but allowed him to hang around the site.  Nasser claimed that Santillan wandered to the edge of the site and was urinating in some bushes when he fell down a cliff, sustaining bruises and going into a fit.  Nasser further testified that he poured a bottle of rum on Santillan to try to revive

him, then put Santillan in his car and drove him to the hospital.

Nasser dropped Santillan off at a local hospital. He refused to identify himself, and told the emergency workers that Santillan had been in a fistfight and had then fallen down drunk in a ditch. It was determined that Santillan's injuries included a fractured skull, damage to his temporal and frontal lobes, a broken shoulder, and six broken ribs. Police were told by Santillan's cousin that Santillan had been working on the Target building; discovered scattered tools and a bloody shirt at the construction site; and found no evidence to substantiate Nasser's story that Santillan had fallen down in a ditch.

Santillan filed suit against Nasser and Zila in the District of the Virgin Islands. He alleged that the accident "was directly caused by the negligence of the Defendants." (Joint Appendix ("J.A.") 2.) He also alleged that Nasser poured alcohol on Santillan to "make it appear that he was drunk;" fled the hospital after dropping Santillan at the emergency room; "gave false testimony" to the police about what had occurred; and gave false testimony to the doctors as to how the accident occurred despite the fact that he "knew or should have know that since [Santillan] was unconscious, it was vital to the treatment of [Santillan] that a true account be given." (J.A. 3.) Santillan stated that he suffered "physical damages, medical expenses, loss of income, loss of capacity to earn income, mental anguish, pain and suffering, and loss of enjoyment of life" as a result of the accident. Id. Finally, Santillan alleged that the "actions of the Defendants were and are so outrageous and done with such callous disregard of the rights and interests of the

5

Plaintiff as to entitle the Plaintiff to an award of punitive damages." (J.A. 4.)

The case proceeded to trial. A jury found in favor of Santillan and awarded $528,823 in compensatory damages (for economic loss and medical expenses), as well as $50,000 in punitive damages against Nasser, and $101,000 in punitive damages against Zila. Following the verdict, Nasser and Zila filed a Motion for Judgment as a Matter of Law or, in the alternative, for a new trial, pursuant to Federal Rules of Civil Procedure 50 and 59. The District Court denied the motions in large part, but did rule to set aside the jury's award of punitive damages award against Zila. In a separate opinion, the District Court also determined that Santillan should not be granted many of the costs and fees he requested.

On appeal, Nasser argues that the District Court erred by not also striking the punitive damages award against him; Santillan cross-appeals and contends that the District Court erred by striking the punitive damages award against Zila. Santillan further appeals the District Court's decision to deny his request for certain costs and fees. We will address each issue in turn.[2]

## II.

Pursuant to Virgin Islands law, punitive damages are designed to "punish [a person] for his outrageous conduct and to deter him and others like him from similar

---

[2] The District Court had jurisdiction pursuant to 28 U.S.C. § 1332. We have jurisdiction pursuant to 28 U.S.C. § 1291.

conduct in the future." RESTATEMENT (SECOND) OF TORTS § 908 (1).[3]  Punitive damages

may be awarded for:

> conduct that is outrageous, because of the defendant's evil motive or his reckless
> indifference to the rights of others. In assessing punitive damages, the trier of fact
> can properly consider the character of the defendant's act, the nature and extent of
> the harm to the plaintiff that the defendant caused or intended to cause and the
> wealth of the defendant.

RESTATEMENT (SECOND) OF TORTS § 908(2).  In "determining the amount of punitive

damages, as well as in deciding whether they should be given at all, the trier of fact can

properly consider not merely the act itself but all the circumstances including the motives

of the wrongdoer, the relations between the parties and the provocation or want of

provocation for the act."  Id. at cmt. e.  As a result, such "awards are the product of

numerous, and sometimes intangible, factors; a jury imposing a punitive damages award

must make a qualitative assessment based on a host of facts and circumstances unique to

the particular case before it."  TXO Prod. Corp. v. Alliance Resources Corp., 509 U.S.

443, 457 (1993).

We review *de novo* the jury's decision to grant a punitive damages award, as well

as the District Court's decision to strike such an award.  Cooper Indus., Inc. v.

Leatherman Tool Group, Inc., 532 U.S. 424, 431 (2001).  The "touchstone of appellate

review of punitive damages awards is reasonableness, not exactitude."  Willow Inn, Inc. v.

---

[3] The Virgin Islands have adopted the Restatements of Law as the "rules of
decision." 1 V.I.C. § 4.

7

Public Service Mut. Ins. Co., 399 F.3d 224, 231 (3d Cir. 2005); see also BMW of North America, Inc. v. Gore, 517 U.S. 559, 622 (1996).

For the reasons below, we conclude that the District Court was correct to uphold the jury's decision to award punitive damages against Nasser, but erred when it struck the jury's decision to award punitive damages against Zila.

**A.**

Nasser argues that the District Court erred when it failed to strike the punitive damages award against him. Although he cites to a number of cases for the proposition that "liability in this type of case is sharply limited to cases [of] particularly egregious behavior," Appellant's Br. at 48, he provides no reason why this court should consider his behavior anything less than "reckless[ly] indifferent to the rights of others," if not downright "evil." RESTATEMENT (SECOND) OF TORTS § 908(2). When the accident occurred, Nasser – instead of calling an ambulance – placed Santillan in his car, poured rum over him, left him at the emergency room door, and lied repeatedly about what had occurred, both to the medical staff at the hospital (who needed the information in order to treat Santillan) and to the police (in order to cover up the fact that the accident had occurred at the construction site). As the District Court observed, "Nasser Sharmouj's attempts to cover-up the circumstances of the accident could reasonably be considered outrageous enough to support a punitive damages award against him." (J.A. 865.) Consequently, we find that the District Court's decision to uphold the jury's award of

punitive damages against Nasser was correct.

**B.**

On cross-appeal, Santillan argues that the District Court erred when it set aside the punitive damages award against Zila. Punitive damages can properly be awarded against an employer because of an act by an agent if:

> (a) the principal or a managerial agent authorized the doing and the manner of the act, or
> (b) the agent was unfit and the principal or a managerial agent was reckless in employing or retaining him, or
> (c) the agent was employed in a managerial capacity and was acting in the scope of employment, or
> (d) the principal or a managerial agent of the principal ratified or approved the act.

RESTATEMENT (SECOND) OF TORTS § 909. The act committed by the agent must be "clearly outrageous to justify the vicarious imposition" of punitive damages on the principal or managerial agent. Chuy v. Phila. Eagles Football Club, 595 F.2d 1265, 1278 (3d Cir. 1979).

In striking the punitive damages award against Zila, the District Court reasoned that:

> First, there was no evidence to suggest that Defendant Zila Sharmouj authorized, approved or ratified her son's outrageous conduct. Next, the Court finds no evidence that Defendant Zila Sharmouj was reckless in employing Defendant Nasser Sharmouj . . . Reckless conduct is 'much more than mere negligence: it is gross deviation from what a reasonable person would do.'

(J.A. 865-66.) The District Court went on to state that because Nasser had successfully supervised the construction of the Princesse Cash and Carry building, Zila had a good

9

reason to believe that he was capable of taking on this similar task. The District Court

further determined that the acts that took place after the accident occurred – Nasser's

decision to drive Santillan to the hospital, to pour rum on him, and to lie about the

circumstances of the accident – went beyond the scope of his employment and could not

be attributed to Zila or form the basis of a punitive damages award against her. Finally,

the District Court found that the fact that Zila and Nasser failed to follow safety

regulations at the site set by the Occupational Safety and Health Administration (OSHA)

was "not . . . a sufficient basis for a jury to award punitive damages" because "evidence

of OSHA violations is not negligence per se, but can be considered as evidence of

negligence" and "[n]egligence alone . . . is not a basis for punitive damages." (J.A. 866.)

On appeal, Santillan argues that it was reasonable for the jury to infer

that Zila had full knowledge that Nasser was constructing the Target building with

immigrant labor; that no safety equipment was being used; that Santillan was on the roof

without protection; and that a forklift was being used to push plywood toward Santillan

two stories up. Appellee's Br. at 50-51. Santillan further argues that Zila repeatedly lied

on the stand at trial, stating that she had no knowledge of what was going on at the site,

did not know if anyone was in fact working on the site, and was unaware that anyone had

been injured there. Id. For these reasons, Santillan contends that punitive damages were

proper against Zila.

While we agree with the District Court that Nasser's behavior in attempting to

cover up the accident could be considered outside the scope of his employment, we ultimately conclude that the jury's decision to award punitive damages against Zila should be upheld because Zila was reckless in retaining Nasser to oversee the construction of the Target building pursuant to Restatement (2d) of Torts § 909(b). We do not find convincing the District Court's conclusion that Zila could assume Nasser was a capable foreman because he had built the Princesse Cash and Carry without incident. There is no evidence on the record to indicate what the conditions were at the construction site for the Princesse building; the absence of an accident alone is not sufficient proof that the construction of the Princesse building was conducted in a proper manner.

What is clear from the evidence presented at trial is that conditions at the Target building construction site were extremely poor: there was no safety equipment of any kind provided to the workers, the relevant permits from local authorities had not been secured and Worker's Compensation coverage was not paid. There was also ample evidence at trial (via the testimony of Zila's daughter and other employees) for a reasonable jury to conclude that Zila was aware of these conditions from the time that the project commenced through the date of the accident, despite her testimony to the contrary. This knowledge of the poor conditions, and the decision to continue to employ Nasser as the manager of the construction site, form the basis of Zila's liability.

**III.**

Following the jury's verdict, Santillan requested that the District Court award him $50,418.25 for various costs. After oral argument on the claims, the District Court awarded Santillan only $10,359.50 for the following items:

> Subpoena, interpreter and transcript costs for discovery depositions were denied regardless of whether the transcripts were used for impeachment purposes at trial. The expenses of deposition transcripts used as trial testimony were allowed.
>
> Standard subpoena and witness fees have been allowed for plaintiff's witnesses who testified at trial including experts.
>
> Hotel and travel expenses for plaintiff's forensic economist were allowed.
>
> Other costs of photos, documents, photo enlargements, trial interpreters etc., have been allowed.

(Supplemental Joint Appendix "S.J.A." 2305.) The District Court denied Santillan's remaining requests – including reimbursement for costs associated with depositions, copying, service of subpoenas and the retention of expert witnesses – finding that they were"either insufficiently necessary or excessive." (S.J.A. 2304.) The District Court indicated that it had relied on both 28 U.S.C. § 1920 and V.I. Tit. 5, § 541 to reach its decision.

On appeal, Santillan argues that the District Court erred by relying in part on 28 U.S.C. § 1920; he further contends that he is entitled to the remainder of the costs and fees requested. Our review is for abuse of discretion. Dr. Bernard Heller Foundation v. Lee, 847 F.2d 83, 88 (3d Cir. 1988).

Prevailing parties in the District of the Virgin Islands who incur certain costs in

connection with Virgin Islands territorial claims may be entitled, at the discretion of the District Court, to reimbursement of those costs pursuant to V.I. Tit. 5, § 541. Figueroa v. Buccaneer Hotel, Inc., 188 F.3d 172, 183 (3d Cir. 1999). Such parties cannot be awarded costs pursuant to 28 U.S.C. § 1920 – the federal statute that authorizes reimbursement for a similar set of expenses – because this statute does not apply in the District Court of the Virgin Islands. Dr. Bernard Heller Foundation, 847 F.2d at 87. This is because the District Court of the Virgin Islands does not fall within the definition of "court of the United States" in title 28 of the United States Code; that definition encompasses only those courts where judges are "entitled to hold office during good behavior," 28 U.S.C. § 451, whereas the judges who sit on the District Court of the Virgin Islands have terms that are capped at 10 years. 48 U.S.C. § 1614(a).

For this reason, it was improper for the District Court in this case to rely in part on 28 U.S.C. § 1920 in reaching its decision about which costs to grant Santillan. Moreover, there is an insufficient record to determine whether or not the District Court's decision to deny Santillan's additional requests for costs constituted an abuse of discretion. The District Court stated only that those costs that were not granted were denied as "either insufficiently necessary or excessive." (S.J.A. 2304.) Without further explanation, it is impossible to know whether the District Court was within its discretion to deny Santillan the costs and fees he requested.

**IV.**

13

For the reasons set forth above, we reverse the District Court's decision to set aside the punitive damages award against Zila. We also remand the question of whether or not Santillan is entitled to the fees and costs requested that were initially denied so that the District Court can provide a more complete explanation for its decision. On all other issues, we affirm the District Court.