[Crim. No. 14856.   Second Dist., Div. Four.   May 27, 1969.]

THE PEOPLE, Plaintiff and Respondent, v. HERMAN
KING, Defendant and Appellant.

Morris Lavine, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Lawrence K. Keethe, Deputy Attorney General, for Plaintiff and Respondent.

FILES, P. J.—Defendant was charged with the murder of his wife on May 29, 1964. At the first trial a jury found him guilty of murder in the second degree, but the judgment was reversed for failure of the trial court to instruct on manslaughter. (2 Cr. 10724, unpublished, July 14, 1966.) Thereafter a jury was waived and the case was retried to the court, which at the close of the evidence found defendant guilty of murder, second degree. Later, when defendant moved for a new trial, the court denied the motion but reduced the offense to voluntary manslaughter. This is defendant's appeal from the judgment.

During the evening of May 28, 1964, defendant was at his work as the operator of the Red Shanty Bar. His wife, Wanda King, was there drinking between 5 p.m. and 1:30 a.m. on the 29th. She was heard to shout profanity at her husband, and she once hit him with her fist. About 1:30 she left. Witness Jones assisted defendant to close the bar and count his receipts. Between 2:30 and 3 a.m. Jones escorted defendant to the latter's home, which was "right behind" the Red Shanty Bar. Defendant was drunk. Jones went in the house and stayed five or ten minutes. Mrs. King was not there, and the inside of the house was in order. Jones then retired to his own home, which was less than a block away.

Witness Dunham saw Mrs. King on the street between 3 and 4 a.m. She did not appear to have any injuries at that time.

At 9 a.m. defendant was in Jones' front yard. The two of them went to a liquor store and purchased a half pint of liquor, which they drank in company with one or two others.

At 10:15 a.m. Mrs. Horne, who was Mrs. King's sister, brought police to defendant's home. Mrs. King was found in bed, nude, covered with a sheet. Her eyes were black and "she was pretty well messed up." There was blood in the living room and on the bed and blood was spattered around the bathroom. The house appeared to have been the scene of a fight.

Mrs. King was alive when the officers found her but she expired about 3 o'clock that afternoon.

The autopsy showed that Mrs. King died of brain injuries resulting from multiple blows to her head, but there was no skull fracture.

Shortly after Officer Erickson arrived, about 10:20 a.m., defendant approached the house and was pointed out to the officer as the husband of the injured woman. Officer Erickson then engaged defendant in voluntary conversation which continued, off and on, for a period of 20 to 25 minutes. At the end of that time Erickson arrested defendant. Concerning the circumstances of the conversation, Officer Erickson testified that defendant was not in custody, but the officer believed it his duty to make some inquiries, and for that reason he would have detained defendant if defendant had attempted to leave. The only portion of Officer Erickson's conversation with defendant which was received in evidence was this: "I originally asked Mr. King when was the last time he had seen his wife. He stated approximately one hour previous to my hailing him over. And I asked him what condition had she been in at that time. His exact words, 'I do not know'; however, in effect he stated she was in pretty bad shape.
"    .    .    .    .    .    .    .    .    .    .    .

"I asked him if he knew how she had come to being in that condition. He stated he did not. And then I asked him what time prior to this hour previous had he seen her. Then he went on to state that the last time he seen her, when she was not injured, was approximately 1:00 a.m. that same morning when she had left the Red Shanty Bar. He then stated that next time he had seen her was approximately 2:30 a.m. the same morning when he returned to the apartment after closing the bar. He had walked in, saw her laying on the floor of the living room, nude, in basically the same condition in which I found her. I believe he stated he asked her what was wrong.
"    .    .    .    .    .    .    .    .    .    .    .

"He had asked her what was wrong. She stated, 'I'm sick.'
"He then picked her up, took her to the bathroom of the

apartment where he cleansed her face. He then put her to bed, got into bed himself, arose later on in the morning, approximately 9:00 a.m. At that time, Mrs. King was either asleep or unconscious. He then left the apartment and went up to the bar.

"That was the sum and substance of our—our first conversation."

This conversation took place before the officer had talked with Jones.

Later, after talking with Jones and noting an inconsistency between the stories, the officer decided to arrest defendant.

At the police station it was noticed that there were abrasions on a knuckle and the middle finger of defendant's right hand, and that the area was swollen and red. Photographs of the hand were taken and received in evidence.

No defense evidence was offered.

### SUFFICIENCY OF EVIDENCE

There is no room for argument in this court as to the sufficiency of the evidence. (*People* v. *Hills* (1947) 30 Cal.2d 694, 700 [185 P.2d 11].) ■ The nature of Mrs. King's injuries, considered together with the condition of the house, indicated she had been beaten to death in the home between 3 a.m. and 9 a.m., when defendant was apparently present. If someone else had done it defendant surely would have made some complaint and would have sought medical aid for his wife. The circumstantial evidence, absent any showing of other circumstances indicating another hypothesis, is most compelling.

### DEFENDANT'S EXTRAJUDICIAL STATEMENTS

■ The officer's testimony supports the finding that defendant was not in custody at the time of the conversation which was received in evidence. Rather, this episode constituted "General on-the-scene questioning as to facts surrounding a crime," which is not subject to the *Miranda* rules as to warning and waiver. (See *Miranda* v. *Arizona* (1966) 384 U.S 436, 477 [16 L.Ed.2d 694, 708, 86 S.Ct. 1602, 10 A.L.R.3d 974] ; *People* v. *Goodridge* (1969) 70 Cal.2d 824, 834-835 [76 Cal. Rptr. 421, 452 P.2d 637] ; *People* v. *Manis* (1969) 268 Cal. App.2d 653 [74 Cal.Rptr. 423].)

The officer had arrived in a home, to find a woman who was apparently the victim of a battery. He was making inquiry of the woman's husband as to what had happened. This is not

the kind of questioning which is subject to the pressures which made the *Miranda* rules necessary.

*Orozco* v. *Texas* (1969) 394 U.S. 324 [22 L.Ed.2d 311, 89 S.Ct. 1095] involves facts which should be distinguished from the case at bench. There four officers went to Orozco's home at 4 a.m. They first placed him under arrest and then interrogated him. It is apparent that the officers must have gone to Orozco's home at that hour for the particular purpose of arresting him and questioning him about a crime which they suspected he had committed elsewhere. In our case we have no arrest, simply a casual meeting at the scene, between a potential witness and an officer whose investigation had not reached the point where he could accuse anyone. Though the officer would have detained defendant if he had attempted to leave, this intention was not communicated to defendant.

█ If the testimony should have been excluded under the *Miranda* rules, the error was harmless beyond a reasonable doubt. The statement made by defendant to the officer was exculpatory on its face, but incriminating only in that it conflicted with witness Jones' statement that defendant came home before his wife did. This added little to the strong circumstantial case against defendant. Absent any evidence pointing to someone else as the assailant, a conviction of defendant on retrial would be inevitable.

### THE PHOTOGRAPH

It is the contention of defendant that it was constitutionally improper to photograph his hand for evidentiary purposes without first advising him of his constitutional rights and without inviting him to have counsel present. There is no authority for that position. █ Such decisions as *Schmerber* v. *California* (1966) 384 U.S. 757, 764 [16 L.Ed.2d 908, 916, 86 S.Ct. 1826], and *People* v. *Graves* (1966) 64 Cal.2d 208 [49 Cal.Rptr. 386, 411 P.2d 114], establish that the preservation of physical evidence, by humane methods, violates no constitutional right of the accused. (See also *United States* v. *Wade* (1967) 388 U.S. 218, 222 [18 L.Ed.2d 1149, 1154, 87 S.Ct. 1926]; *Gilbert* v. *California* (1967) 388 U.S. 263, 266 [18 L.Ed.2d 1178, 1182, 87 S.Ct. 1951].)

The judgment is affirmed.

Jefferson, J., and Kingsley, J., concurred.

A petition for a rehearing was denied June 13, 1969, and appellant's petition for a hearing by the Supreme Court was denied July 23, 1969.