UNITED STATES OF AMERICA ex rel. Johnny WILSON, Jr., Petitioner,

v.

STATE OF DELAWARE, Respondent.

Civ. A. No. 77–262.

United States District Court,
D. Delaware,
Wilmington.

Aug. 30, 1977.

Johnny Wilson, Jr., pro se.

Francis A. Reardon, Deputy Atty. Gen., Dept. of Justice, Wilmington, Del., for respondent.

LATCHUM, Chief Judge.

Johnny Wilson, Jr., a state prisoner who was convicted by a jury in the Superior Court of the State of Delaware of murder in the second degree,[1] has renewed his petition, pursuant to 28 U.S.C. § 2254, for a

---

1. The conviction was affirmed by the Delaware Supreme Court. *Wilson v. State*, No. 94, 1971 (Del.Sup., *filed* July 18, 1972).

writ of habeas corpus. As in his original petition,[2] Wilson claims that he was denied his constitutional right to a fair trial because the State suppressed or failed to disclose exculpatory evidence. The evidence withheld was a signed statement given by George Pierce, an eyewitness to the killing, to a police officer less than five hours after the shooting occurred. The statement tends to corroborate the petitioner's trial testimony that he acted in self-defense.

Although the State did not reveal the existence of Pierce's statement to the petitioner at any time prior to or during his trial, the petitioner knew about Pierce and attempted unsuccessfully to locate him before trial.[3]

In 1973 the petitioner located Pierce and sought a new trial based on newly discovered evidence. After an evidentiary hearing held on May 1, 1974, Superior Court Judge Andrew Christie denied the motion.[4] Petitioner first learned of the written statement given by Pierce when the State introduced it into evidence at the May 1, 1974 hearing.[5]

After his original petition for a writ of habeas corpus was denied for failure to exhaust available state remedies, the petitioner advanced his constitutional claim in state court by a Rule 35 motion for postconviction relief. In a letter opinion, dated June 25, 1976, Judge Christie denied the motion; the Delaware Supreme Court filed an opinion affirming that decision. *Wilson v. State,* 372 A.2d 198 (Del.Sup., *filed* March 30, 1977).

 Under the circumstances in this case, there is no need for an evidentiary hearing. The petitioner received a full, fair and adequate hearing in the state courts, and the factual findings of the trial judge are fairly supported by the record. Therefore, those findings of fact are presumed correct. 28 U.S.C. § 2254(d); *see Townsend v. Sain,* 372 U.S. 293, 318, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963); *Brown v. Allen,* 344 U.S. 443, 463–65, 73 S.Ct. 397, 97 L.Ed. 469 (1953). This Court is, of course, not bound by the determination on the merits of the petitioner's constitutional claim reached in the state court proceedings. *See Wainwright v. Sykes,* —— U.S. ——, ———— ———, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977).

 The single issue presented by this petition is whether the prosecution's failure to disclose Pierce's statement to the petitioner deprived him of a fair trial. The resolution of that issue depends on the materiality of Pierce's statement to the issue of guilt or innocence. Importantly, the petitioner did not specifically request disclosure of any statements made by Pierce.[6] Where no specific request for the information in question has been made, the Supreme Court has held that:

"The proper standard of materiality must reflect our overriding concern with the justice of the finding of guilt. . . [I]f the omitted evidence creates a reasonable doubt that did not otherwise exist, constitutional error has been committed. This means that the omission must be evaluated in the context of the entire record. If there is no reasonable doubt about guilt whether or not the additional evidence is considered, there is no justification for a new trial." *United States v. Agurs,* 427 U.S. 97, 112–13, 96 S.Ct. 2392, 2401–02, 49 L.Ed.2d 342 (1976) (footnotes omitted).

---

**2.** The petition was dismissed on June 6, 1975, because the petitioner had failed to exhaust available state remedies. Docket Item 1.

**3.** State Docket Item 58, p. 3. (The State Docket is No. 233 Criminal Action 1970.)

**4.** State Docket Item 40. The Delaware Supreme Court summarily affirmed. *Wilson v. State,* 344 A.2d 386 (Del.Sup., *filed* January 10, 1975).

**5.** State Transcript of Proceedings on Petition for New Trial ("N.T. ___") 82–83.

**6.** No general request for all *Brady* material was made either. Docket Item 1, Statement of Facts, p. 3; State Docket Item 58, p. 3.

A lesser standard of materiality governs nondisclosure when a specific request has been submitted. *See United States v. Agurs,* 427 U.S. 97, 106, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976); *Jones v. Jago,* 428 F.Supp. 405, 408 (N.D.Ohio 1977).

Application of the above-quoted standard to the facts of this case is not an easy task. Nonetheless, a review of the trial transcript, the transcript of the May 1, 1974 evidentiary hearing, and the affidavits submitted in conjunction with the Rule 35 motion for postconviction relief has convinced this Court that Pierce's statement would not have enabled the defense to create a reasonable doubt that did not otherwise exist.

At trial the petitioner claimed self-defense in response to the prosecution's charge of second degree murder. The evidence adduced at trial indicates that the victim had been walking toward the petitioner and that they were about five to eight feet apart at the time of the shooting. A penknife was found on the ground beneath the victim's body; the prosecution elicited from several witnesses after the fact that the knife was in a closed position when they saw it. The only eyewitness who testified at trial, Willie White, gave a rather confused account of the shooting which tended to support the prosecution's theory of the case. As to whether the victim had a knife in his hand, however, White testified that he did not know because the victim had his hand in a fist and White was sitting in the back of petitioner's car.[7]

White also testified that after the petitioner took out his shotgun he ignored an admonition from Pierce not to shoot the victim.[8] The trial judge, over objection, admitted the statement allegedly made by Pierce under the *res gestae* exception to the hearsay rule.[9]

As the sole defense witness, the petitioner testified that the victim had begun "cutting" at him with a knife. Much of the remainder of the petitioner's testimony, however, was confused and at some points incredible. Among other things, he denied the presence of Pierce at the scene.[10]

 Against this background, it is necessary to gauge the impact of Pierce's statement on the issue of guilt or innocence. Pierce told the police that the victim ("Bo") started coming toward the petitioner ("Johnnie") with a knife. Pierce continued:

> "Then Johnnie reached under the seat and got his gun. Johnnie kept backing and Bo raised his right arm and started to come down on Johnnie with the knife."[11]

If this statement were admissible, it undoubtedly would have bolstered the petitioner's self-defense claim. But in *United States v. Agurs, supra,* the Supreme Court expressly held that:

> "The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense." 427 U.S. at 109–10, 96 S.Ct. at 2400.

Rather, the petitioner bears the burden of demonstrating that the information could have been used to create a reasonable doubt concerning his guilt. That burden has not been satisfied in this case for several reasons.[12]

---

7. State Trial Transcript ("T. ___") 105, 109. Like the other prosecution witnesses, White first saw the knife on the ground by the victim's body at which time it was closed. T. 112.

8. White testified as follows:
 Q. (prosecutor) What did George Pierce say to Johnnie Wilson?
 A. He told Johnnie don't shoot that man.
 Q. And what did Johnnie say?
 A. He said I am going to shoot that bad motherfucker, and about that time he shot. T. 106.

9. T. 106.

10. T. 167.

11. State Docket Item 49, exhibit A.

12. Even with Pierce's testimony, including his statement, the petitioner could not have established that he acted in justifiable self-defense, because under Delaware law he had an obligation to retreat or otherwise avoid the use of deadly force, if possible. 11 Del.C. § 464(e). The additional information, however, conceivably could have induced the jury to convict the defendant of manslaughter instead of second degree murder. The trial judge instructed the jury that, absent proof of malice, death caused by the use of excessive force in self-defense constitutes manslaughter. T. 187–88.

First, it is unlikely that the petitioner could have made any use of Pierce's statement at trial. The petitioner knew Pierce was a potential witness whose testimony probably would be exculpatory; yet, the defense could not locate Pierce at the time of trial.[13] While the petitioner might have redoubled his efforts to find Pierce had he known of Pierce's statement to the police, it remains highly unlikely that petitioner could have produced him at trial. Pierce moved from Delaware in 1970 about two weeks after the shooting.[14] Originally, he went to Miami, Florida, then to Jacksonville, then to some place in Georgia and so on until 1973 when he returned to Delaware.[15] Pierce testified at the May 1, 1974 evidentiary hearing that no one in Delaware knew his address, explaining that "when I leave, I don't know—I don't want nobody to know where I am."[16] These facts suggest that disclosure of Pierce's statement would not have affected the inability of the defense to locate Pierce before trial.[17]

In the absence of Pierce as a witness, his statement would have been excluded from evidence at trial as inadmissible hearsay. Whether inadmissibility is sufficient in itself to support a finding that the information withheld is not "material" in a constitutional sense has not been squarely decided. *See* Comment, *Brady v. Maryland* and the Prosecutor's Duty to Disclose, 40 U.Chi. L.Rev. 112, 126 n. 70 (1972). In *Griffin v. United States*, 336 U.S. 704, 69 S.Ct. 814, 93 L.Ed. 993 (1949), the prosecution failed to disclose to the defendant that the homicide victim had an open penknife in his pocket when he died. The Supreme Court remanded for further consideration of the question of the admissibility of the evidence, but in so doing observed that:

"If the Court of Appeals had decided the disputed evidence was not admissible in the District of Columbia on a claim of self-defense and on that ground had sustained the denial of the motion for a new trial, there would have been an end of the matter." 336 U.S. at 709,[18] 69 S.Ct. at 816.

*Griffin v. United States*, therefore, suggests that admissibility is relevant to determining materiality. Justice Fortas arguably took a different position in a concurring opinion in *Giles v. Maryland*, 386 U.S. 66, 98, 87 S.Ct. 793, 809, 17 L.Ed.2d 737 (1967), when he stated:

"I do not agree that the State may be excused from its duty to disclose material facts known to it prior to trial solely because of a conclusion that they would not be admissible at trial. The State's obligation is not to convict, but to see that, so far as possible, truth emerges." (Footnote omitted.)

Although the opinions expressed in the *Griffin* and *Giles* case, both of which were decided before *Agurs*, appear divergent, they can be harmonized under the analytical framework set forth in *Agurs*. In the latter case, the Court recognized that the problem of disclosure of exculpatory evidence arises in two contexts: (1) before or during trial—what should be disclosed; and (2) after trial—whether nondisclosure violated the defendant's right to due process. *United States v. Agurs, supra,* 427 U.S. at 107–08, 96 S.Ct. 2392. While logically the same standard must apply at both times, the Court noted a "significant practical difference" between the two situations.

---

**13.** N.T. 9–14. The record shows, *inter alia,* that the defense requested and received a continuance to obtain more time to locate "unspecified witnesses." Docket Item 1, Statement of Facts, p. 3; State Docket Item 40, p. 5.

**14.** State Docket Item 33, p. 3.

**15.** N.T. 61–62.

**16.** N.T. 85–86.

**17.** Moreover, the Supreme Court has expressly rejected a standard for gauging the materiality of "*Brady* material" which focuses on the impact of the undisclosed evidence on the defendant's ability to prepare for trial. *United States v. Agurs, supra,* 429 U.S. at 112 n. 20, 96 S.Ct. 2392.

**18.** On remand, the District of Columbia Circuit held that the evidence was admissible and granted a new trial. *Griffin v. United States,* 87 U.S.App.D.C. 172, 183 F.2d 990 (1950).

Namely, that the prosecutor, unlike the judge, should resolve doubtful questions in favor of disclosure. *Id.* at 108, 96 S.Ct. 2392. On remand, the lower court in *Griffin v. United States, supra,* interpreted the Supreme Court's decision as expressing a similar principle.

"[T]he case emphasizes the necessity of disclosure by the prosecution of evidence that may reasonably be considered admissible and useful to the defense. When there is substantial room for doubt, the prosecution is not to decide for the court what is admissible or for the defense what is useful." 87 U.S.App.D.C. 172, 175, 183 F.2d 990, 993 (1950).

Justice Fortas' comments in *Giles* appear to voice the same concern. Thus, while the prosecution may not be justified in refusing to disclose exculpatory material on the grounds that it would be inadmissible at trial, a court may consider admissibility after trial in determining whether the information withheld could create a reasonable doubt of guilt.

▉ In this case, I have concluded that disclosure of Pierce's statement would not have resulted in the appearance of Pierce at trial, and therefore, the statement itself would not have been admissible. Consequently, the petitioner was not denied his right to due process. As demonstrated below, however, the result would be the same even if Pierce had testified at trial and his statement had been admitted into evidence.

The exculpatory effect which Pierce's testimony might be expected to have is substantially lessened by several inconsistencies which exist between the statement he gave to the police and his testimony at the May 1, 1974 evidentiary hearing. For example, Pierce told the police that the petitioner "reached under the seat and got his gun," which was unloaded, and then "kept backing up to get time to load it." [19] At the evidentiary hearing, Pierce testified that he fell to the floor of the car when he saw the victim raise the knife in a threatening gesture and that he did not see the gun or know where it came from. [20] Many more serious inconsistencies exist between the original statement by Pierce and the affidavit he signed before a notary public on February 21, 1974. [21] Although these discrepancies probably stem from the fact that the petitioner drafted the affidavit and Pierce simply signed it without alteration, [22] they still reflect adversely on the reliability of Pierce's testimony.

Finally, the court emphasized in *Agurs* that the information withheld must be evaluated in the context of the entire record. During his trial, the petitioner testified that Pierce was not present at the scene of the shooting. [23] Although the petitioner admitted at the May 1, 1974 evidentiary hearing that he had perjured himself at trial concerning the fact that Pierce was an eyewitness, [24] the problems he created for himself by giving false testimony cannot be completely ignored.

The evidence presented against the petitioner at trial was substantial. The verdict was not of questionable validity such that "additional evidence of relatively minor importance might be sufficient to create a reasonable doubt." *United States v. Agurs, supra,* 427 U.S. at 113, 96 S.Ct. at 2402. Moreover, Pierce's statement consists entirely of information which is "merely repetitious, cumulative, or embellishing of facts otherwise known to the defense or presented to the court," and therefore, its nondisclosure does not warrant reversal. *Giles v. Maryland,* 386 U.S. 66, 98, 87 S.Ct. 793, 809, 17 L.Ed.2d 737 (1967) (Fortas, J., concurring), *quoted in United States v. Agurs,* 427 U.S. 97, 109 n. 16, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976).

19. State Docket Item 49, Exhibit A.

20. N.T. 71–72, 84.

21. State Docket Items 33 and 40, p. 3.

22. N.T. 79.

23. T. 162, 167.

24. At the evidentiary hearing, petitioner said he lied at trial because he thought he "was going to be electrocuted or hung." N.T. 17. I concur in Judge Christie's finding that the record belies that explanation. *See* N.T. 17–21; State Docket Item 40, pp. 3–4.

In sum, this Court finds that, although the failure of the prosecution to disclose Pierce's statement to the petitioner may have been improper, it did not deprive petitioner of his constitutional right to a fair trial.

Accordingly, an order will be entered denying the writ and dismissing the petition.