Joseph **CONYERS**, Defendant
below, Appellant,

v.

**STATE** of Delaware, Plaintiff
below, Appellee.

Supreme Court of Delaware.

Submitted Sept. 11, 1978.

Decided Nov. 30, 1978.

Nancy Jane Mullen and David M. Lukoff, Asst. Public Defenders, Wilmington, for defendant below, appellant.

Eugene M. Hall, Deputy Atty. Gen., Wilmington, for plaintiff below, appellee.

Before HERRMANN, C. J., DUFFY and McNEILLY, JJ.

HERRMANN, Chief Justice:

On this appeal from conviction for Second Degree Murder and Possession of a Deadly Weapon during the Commission of a Felony, the defendant raises three issues: (1) that the Trial Court improperly denied his motion to exclude statements he made during the initial on-the-scene investigation of the crime; (2) that the Trial Court erred in denying his motion for judgment of acquittal on the ground of insufficient evidence to support a conviction of Second Degree Murder; and (3) that the Trial Judge improperly admitted color photographic slides of the victim's wound taken by the medical examiner at the time of the autopsy. We find these contentions to be without merit and affirm.

I.

Police Officer King responded to a call to investigate a possible death at the apartment of the defendant, Joseph Conyers. Officer King was admitted by the defendant and the defendant's roommate, Eddie King. Eddie King told Officer King that when they returned to their apartment, they had found the victim slumped in a chair in the dining room; he also said that the victim had a history of heart trouble. Officer King examined the victim for vital signs, concluded that he was dead, and called for an ambulance.

The ambulance attendants discovered a gunshot wound. At this point, Officer King called for assistance and ordered the defendant to stay in the living room in order to preserve the scene in the dining room intact for fingerprint examination. Officer Washington, who had arrived in response to Officer King's call for assistance, commenced an inspection of the apartment. The defendant, in the nature of a protest, asked Officer King if Washington had the authority to conduct such investigation. Washington continued to examine the apartment and, in the course thereof, asked the defendant who occupied the bedroom at the rear of the apartment. The defendant seemed upset by the question but, after hesitating, answered that the bedroom was his. In the defendant's bedroom, police found shells of the same caliber as the gun that killed the victim. Although the police did not restrain the defendant at

the apartment (other than telling him to stay in the living room), Officer King testified that if the defendant had attempted to leave, he would have detained him.

The defendant argues that the said statements, made by him during the on-the-scene investigation, should not have been admitted in evidence because they occurred during custodial interrogation without prior *Miranda*[1] warnings. In *Miranda*, the Court defined "custodial interrogation" as questioning by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way. See 86 S.Ct. at 1612.

■ We hold that confining the defendant in the living room to preserve the murder scene, although accompanied by an unarticulated intent of the police to detain the defendant,[2] did not significantly deprive the defendant of his freedom of action and, therefore, did not constitute "custodial interrogation" under *Miranda*. The statements in issue fit the exception recognized by *Miranda* for "general on-the-scene questioning as to facts surrounding a crime or other general questioning of citizens in the fact-finding process." See 86 S.Ct. at 1629; cf. *Laury v. State*, Del.Supr., 260 A.2d 907, 908 (1969).

■ We recognize, of course, that custodial interrogation is not limited to questioning in a police station or after a formal arrest, *Orozco v. Texas*, 394 U.S. 324, 89 S.Ct. 1095, 22 L.Ed.2d 311 (1969); but the circumstances surrounding the statements in issue, and the atmosphere in which they took place, show that they occurred during the initial on-the-scene investigatory stage, rather than during the accusatory or custodial stages, of this case.

There was no reversible error in the admission of the statements in question. Compare *Borodine v. Douzanis*, D.Mass., 455 F.Supp. 1022.

## II.

■ The defendant argues that the denial of his motion for acquittal was improper because the evidence was insufficient to sustain a conviction for murder in the second degree. Under Delaware law, "a person is guilty of murder in the second degree when: (1) He recklessly causes the death of another person under circumstances which manifest a cruel, wicked, and depraved indifference to human life." 11 *Del.C.* § 635.

Since eye-witness testimony was not available and the defendant did not take the stand, the State's case was based entirely upon circumstantial evidence. The evidence demonstrated that the victim was shot through the heart with a twelve-gauge shotgun at close range (approximately ten feet), and that, when shot, the victim was in a helpless state of intoxication, as shown by blood alcohol level tests.

A twelve-gauge shotgun, believed to be the murder weapon, was found in a rear yard approximately thirty feet from the defendant's apartment, and the defendant's fingerprints were found on the weapon. A search of the defendant's bedroom produced a live twelve-gauge shell in his nightstand drawer, a box of live twelve-gauge shotgun shells in his closet, and a spent twelve-gauge shotgun shell underneath clothes on a chair. A ballistics expert testified that the spent shall "was at one time loaded into and extracted from this weapon" [the shotgun found in the yard bearing Conyers' fingerprints]. The expert also examined the contents of one of the shells from the box of shells found in defendant's closet and compared them with the pellets and wadding recovered from the victim's body, and concluded that the shell used in the

---

1. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

2. For cases holding that an unarticulated intent to detain a defendant does not amount to custodial interrogation, see *Lowe v. United States*, 9th Cir., 407 F.2d 1391 (1969); *People v. King*, 273 Cal.App.2d 418, 78 Cal.Rptr. 146 (1969); and *People v. Allen*, 28 A.D.2d 724, 281 N.Y. S.2d 602 (1967). See *State v. Roach*, La.Supr., 322 So. 222 (1975), wherein the Court held that seating the defendant in his living room while officer searched his apartment for marijuana was insufficient restraint to constitute police questioning as custodial interrogation.

shooting could have come from the same box. Finally, a witness who visited the defendant in prison testified that the defendant told her "that he shot him [the victim], but he wasn't intending to kill him."

The defendant recognizes that under Delaware law a malicious intent to kill can be inferred from the use of a deadly weapon. *Bantum v. State,* Del.Supr., 85 A.2d 741, 751 (1952); *Powell v. State,* Del.Supr., 86 A.2d 371, 374 (1952); and *Hallowell v. State,* Del.Supr., 298 A.2d 330 (1972), cert. denied 411 U.S. 951, 93 S.Ct. 1940, 36 L.Ed.2d 413 (1973). However, the defendant attempts to distinguish those cases on the ground that there was evidence therein to indicate the intentional use of the deadly weapon, whereas there was no evidence in the instant case to establish such intent. The argument is refuted by the testimony of the friend who visited the defendant in prison. Also, the jury could have inferred that the shotgun was hidden by the defendant in the yard—an action inconsistent with an accidental or unintentional shooting of the victim at close range.

In ruling upon a motion for acquittal, "the evidence, together with all legitimate inferences therefrom, must be considered from the point of view most favorable to the State. . . . It is only where the State has offered insufficient evidence to sustain a verdict of guilt that the motion will be granted." *State v. Biter,* Del.Super., 119 A.2d 894 (1955); cf. *Edwards v. State,* Del.Supr., 285 A.2d 805 (1971).

The evidence permits an inference that the defendant intended to fire the shotgun at the victim. The jury was warranted in finding that firing a shotgun through the heart of a helpless, inebriated victim at close range manifested a "cruel, wicked, and depraved indifference to human life." Given the evidence in this case together with all permissible inferences therefrom, there was no reversible error in denying the defendant's motion for acquittal on the charge of second degree murder.

III.

After two black and white photographs were introduced into evidence, depicting the victim and his wound as found at the murder scene, the Court admitted into evidence, over the defendant's objection, color slides depicting the wound taken after the body had been moved to the office of the medical examiner. While there was no blood shown in the photographs taken at the murder scene, moving the body to the medical examiner's office caused external bleeding which was colorful on the photographs taken there. The defendant objected to the latter photographs as being cumulative, inflammatory, and prejudicial.

A Trial Judge has broad discretion to admit or reject photographs depicting a victim's injuries, and "absent abuse of discretion, the ruling will be sustained on appeal." *Shantz v. State,* Del.Supr., 344 A.2d 245 (1975). The governing rule is that where photographs are material and have probative value they may be admitted in evidence, if otherwise admissible, unless their prejudicial effect outweighs their evidentiary importance.

In the present case, the color slides were probative of the nature of the wound: the "cookie-cutter" effect depicted in the color photographs, not apparent in the black and white photographs, demonstrated the close range of the shot, which was material to the issue of whether the circumstances manifested a cruel, wicked, and depraved indifference to human life. Compare *Commonwealth v. Sullivan,* Pa.Supr., 371 A.2d 468, 481 (1977) and *Commonwealth v. Shoatz,* 469 Pa. 545, 366 A.2d 1216, 1224 (1976). The slides were not cumulative in that they gave a more detailed impression of the wounds. The defendant argues that such probative effect was negated by the prejudicial effect of the blood shown in the color slides. However, the reason for the appearance of the blood (moving the body) was explained to the jury. Under these circumstances, we conclude that there was no abuse of discretion in the admission of the slides.

AFFIRMED.