**Walter STOKES, Jr., Defendant Below, Appellant,**

v.

**STATE of Delaware, Plaintiff Below, Appellee.**

Supreme Court of Delaware.

Submitted Sept. 19, 1978.

Decided May 9, 1979.

Marsha Kramarck and Richard Baseman, Asst. Public Defenders, Wilmington, for defendant below, appellant.

Peter N. Letang, Deputy Atty. Gen., Wilmington, for plaintiff below, appellee.

Before HERRMANN, C. J., DUFFY and McNEILLY, JJ.

HERRMANN, Chief Justice:

In this appeal from his convictions for First Degree Murder, First Degree Robbery, First Degree Conspiracy, and two counts of Possession of a Deadly Weapon

during the Commission of a Felony, the defendant, Walter Stokes, Jr., raises three issues: (1) that the State's failure to disclose exculpatory statements in a timely manner violated his right to due process of law under *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); (2) that the prosecutor's question to a police witness regarding a co-defendant's statement to the police, and the State's reference to the co-defendant's statement in summation, deprived the defendant of his Sixth Amendment right "to be confronted with the [adverse] witnesses against him"; and (3) that there was insufficient proof of the *corpus delicti* to support the convictions for First Degree Robbery and Possession of a Deadly Weapon during the robbery.

Each issue raised, and the facts relating to it, will be discussed *seriatim.*

I.

*The Brady Issue*

■ On January 13, 1977, the defendant Stokes and co-defendant, Willie Thornton, were indicted for the murder and robbery of James Powell. Stokes's attorney requested *Brady* material[1] on February 3 and 24, and then, for failure of the State to comply, filed a motion to compel discovery of the material on March 18. Prior to trial, the Court granted a motion for severance of the trials of Stokes and Thornton but held a joint hearing on Stokes's motion to suppress certain statements made to, and items of property seized by, the police. On March 31, in response to an apparent violation of his order for sequestration of witnesses at the suppression hearing, the Trial Judge ordered "the State to give the defendant [Stokes] the entire police report and investigation in this case." On April 1, after reviewing the reports, the defendant's counsel moved for mistrial on the grounds that exculpatory *Brady* material in the police files should have been provided to Stokes long before April 1 for investigation. On the scheduled trial date, April 4, the Trial Judge denied the defendant's renewed motion for mistrial and the defendant's trial commenced.

The crucial portion of the police file consisted of a statement by a certain police detective that Walter Graham had told him that one Frances Johnson had told Graham that Kenneth Williams had shot James Powell. The State argues that Graham's statement was not *Brady* material or, in the alternative, that it was disclosed in a timely manner.

In *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 1196–97, 10 L.Ed.2d 15 (1963), the Supreme Court held "that suppression by the prosecution of evidence favorable to the accused upon request violates due process where the evidence is material either to the guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Interpreting *Brady* in 1972, Justice Blackmun stated:

> "The heart of the holding in *Brady* is the prosecution's suppression of evidence, in the face of a defense production request, where the evidence is favorable to the accused and is material either to guilt or to punishment. Important, then, are (a) suppression by the prosecution after a request by the defense, (b) the evidence's favorable character for the defense, and (c) the materiality of the evidence." *Moore v. Illinois,* 408 U.S. 786, 92 S.Ct. 2562, 2568, 33 L.Ed.2d 706 (1972).

Because it is difficult to conceive of evidence more favorable to Stokes than testimony that someone else had shot Powell, Graham's statement fulfills the *Brady* requirement of "evidence favorable to the accused." Furthermore, since the statement was not delivered to Stokes in response to his requests for *Brady* material, the *Brady* requirement of suppression by the prosecution after request by the defendant is met.

The question thus narrows down to whether the statement suppressed meets

---

1. "*Brady* material" is the ordinary short-hand reference to evidence favorable to the defendant and material either to guilt or punishment. See *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 15 (1963).

the third requirement of materiality. In *United States v. Agurs,* 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1974), the Supreme Court established a framework for determining materiality. Noting that the *Brady* disclosure requirement could apply in three different contexts, the Court attempted to delineate a standard of materiality for each:

In the first category, wherein the prosecution knowingly used perjured testimony (or should have known that the evidence was perjured), the Court ruled that the evidence would be deemed material "if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." 96 S.Ct. at 2397.

The second and third categories both relate to the failure of the prosecution to disclose evidence favorable to the accused. These two categories differ in that the second is preceded by a specific request for relevant *Brady* material, while in the third there is either a general request or no request at all. Although the Court stated in *Agurs* that "[w]hen the prosecutor receives a specific and relevant request, the failure to make any response is seldom, if ever, excusable," 96 S.Ct. at 2399, it did not further define the standard of materiality for the second category.[2] As to the third category, the Court stated in *Agurs* that "if the omitted evidence creates a reasonable doubt that did not otherwise exist, constitutional error has been committed. This means that the omission must be evaluated in the context of the entire record." 96 S.Ct. at 2402.

Thus to test for a *Brady* violation, this Court must first determine which category the *Stokes* evidence fits, and then apply the proper test for materiality. Since the defendant does not allege improper use of perjured testimony, we need only determine

whether Stokes's case falls within the second (specific request) or third (general or no request) category. Although there is no bright line between these two categories, the Court in *Agurs* observed that the request in *Brady* was "specific", because "[i]t gave the prosecutor notice of exactly what the defense desired." 96 S.Ct. at 2399. In contrast, a general request for " 'all *Brady* material' or for 'anything exculpatory' . . . really gives the prosecutor no better notice than if no request is made." 96 S.Ct. at 2399.

Stokes requested:

"[i]nformation, reports, statements, written or recorded (in any form whatsoever) known to the State concerning the defendants including, but not limited to, police reports, arrests, or investigations of other crimes, prior commitments to mental institutions, wherever located, and reports of Federal Bureau of Investigation or the like which evidence might tend to exculpate the defendants and thereby assist in the defense of their case (citing *Brady*) . . . [and] [a]ny inconsistent statements known to the State, whether written or oral, made by any State's witness who has testified or will be called to testify."

▮ Under the guidelines laid down in *Agurs,* the Stokes request must be classified as "general" in that it did not ask the prosecutor to produce any specific relevant evidence.[3] It follows that, under *Agurs,* this Court must decide if the failure to disclose Graham's statement was "material" by determining "if the omitted evidence creates a reasonable doubt that did not otherwise exist . . . in the context of the entire record." 96 S.Ct. at 2402.

---

**2.** As the Court stated that a "fair analysis of the holding in *Brady* indicates that implicit in the requirement of materiality is a concern that the suppressed evidence might have affected the outcome of the trial", 96 S.Ct. at 2398, it has been suggested that the "may-have-affected-the-trial-outcome" test is the proper standard. See e. g., *State v. Brown*, Idaho Supr., 98 Idaho 209, 560 P.2d 880, 884 (1977) and M. Rusin, "The Prosecutor's Duty of Disclos[ur]e:

From *Brady* to *Agurs* and Beyond," 69 Jnl. of Criminal Law and Criminology 197, 201 (1978).

**3.** Cf. *United States v. McCrane*, M.D.Pa., 436 F.Supp. 760, 764 (1977), aff'd., 3d Cir., 575 F.2d 58 (1978), which held that defendant's request for "material which could be used to impeach [a Government witness]" was a "general" request.

Helpful factors that reviewing courts have employed to determine materiality under all three *Agurs* standards include:

(1) favorability; see, e. g., *United States v. Hauff,* 7th Cir., 473 F.2d 1350 (1973), cert. denied, 412 U.S. 907, 93 S.Ct. 2299, 36 L.Ed.2d 972 (1973);

(2) admissibility of the evidence at trial; see, e. g., *United States ex rel. Wilson v. State,* D.Del., 437 F.Supp. 407, 412 (1977); *United States v. Atkinson,* E.D.N.C., 429 F.Supp. 880, 884 (1977); *Thornton v. State,* Ga.Supr., 238 Ga. 160, 231 S.E.2d 729, 733 (1977), cert. denied, 434 U.S. 1073, 98 S.Ct. 1260, 55 L.Ed.2d 778 (1978);

(3) extent of probative value;[4] see, e. g., *Garrison v. Maggio,* 5th Cir., 540 F.2d 1271, 1273–74 (1976) (does not require disclosure of impeaching evidence); cert. denied, 431 U.S. 940, 97 S.Ct. 2655, 53 L.Ed.2d 258 (1977); and *United States ex rel. Annunziato v. Manson,* D.Conn., 425 F.Supp. 1272, 1280 (1977) (". . . the same standard applies whether the nondisclosed evidence goes to the fact of the crime or tends to impeach a critical witness"), aff'd, 2d Cir., 566 F.2d 410 (1977);

(4) cumulative nature of the evidence; see, e. g., *Carter v. State,* Ga.Supr., 237 Ga. 617, 229 S.E.2d 411, 414 (1976);

(5) weight of the other evidence presented at trial; see, e. g., *United States v. Agurs,* 96 S.Ct. at 2402 (". . . in the context of the entire record"); and *United States v. Washington,* 5th Cir., 550 F.2d 320, 330 (1977), cert. denied, 434 U.S. 841, 98 S.Ct. 138, 54 L.Ed.2d 105 (1977);

(6) deference to the opinion of the Trial Judge; see, e. g., *United States v. Masri,* 5th Cir., 547 F.2d 932, 937–38 (1977), cert. denied, 431 U.S. 932, 97 S.Ct. 2640, 53 L.Ed.2d 249 (1977).[5]

Favorability is a threshold issue but, as noted above, Graham's statement that a woman told him that Williams shot Powell was unquestionably favorable to Stokes.

However, we need go no further than the admissibility factor in this case. The Graham statement would not have been admissible at trial because of its double hearsay nature. Because the United States Supreme Court has not ruled directly on the element of admissibility as a factor of *Brady* materiality, there is a contrariety of judicial opinion as to whether admissibility at trial is a prerequisite to disclosure. While some courts have held that admissibility may be considered in determining materiality, [see e. g., *United States ex rel. Wilson v. State,* D.Del., 437 F.Supp. 407, 412 (1977) ("While the prosecution may not be justified in refusing to disclose exculpatory material on the grounds that it would be inadmissible at trial, a court may consider admissibility after trial in determining whether information withheld could create a reasonable doubt of guilt"); *United States v. Atkinson,* E.D.N.C., 429 F.Supp. 880, 884 (1977); *United States v. Sedgwick,* D.C.App., 345 A.2d 465, 473 (1975); cert. denied, 425 U.S. 966, 96 S.Ct. 1751, 48 L.Ed.2d 210 (1976); and *Thornton v. State,* Ga.Supr., 238 Ga. 160, 231 S.E.2d 729 (1977), cert. denied, 434 U.S. 1073, 98 S.Ct. 1260, 55 L.Ed.2d 778 (1978)], others have refused to employ admissibility as a factor in determining materiality; [see, e. g., *Emmett v. Ricketts,* N.D.Ga., 397 F.Supp. 1025, 1039 (1975), *State v. Peterson,* Iowa Supr., 219 N.W.2d 665 (1974), and *State v. Hall,* Iowa Supr., 249 N.W.2d 843, 847 (1977), cert. denied, 434 U.S. 822, 98 S.Ct. 66, 54 L.Ed.2d 79 (1977)]; and some courts have ruled that a prosecutor must disclose inadmissible evidence where it would lead to the discovery of admissible evidence.

---

4. In the Trial Court, the prosecutor implied that there was no need to disclose Graham's statement because the police thought that Graham's statement lacked credibility. It may well be that Graham's statement lacked credibility; but in an adversary system, that decision may not be made unilaterally by the State. In such case, the State should disclose the statement and allow the defense to make its own assessment of credibility. See *State v. Peterson,* Iowa Supr., 219 N.W.2d 665, 674 (1974).

5. A noteworthy discussion of the "factors of materiality" can be found in M. Rusin, "The Prosecutor's Duty of Disclos[ur]e: From *Brady* to *Agurs* and Beyond," 69 *Jnl. of Criminal Law and Criminology* 197, 207–217 (1978).

[See, e. g., *United State v. Ahmad*, M.D. Pa., 53 F.R.D. 186 (1971); *United States v. Wigoda*, 7th Cir., 521 F.2d 1221, 1227 (1975); and *In re Ferguson*, Calif.Supr., 5 Cal.3d 525, 96 Cal.Rptr. 594, 487 P.2d 1234 (1971)].

█ After due consideration of the broad diversity of judicial opinion on the question, we are persuaded that admissibility should be employed on review as an essential factor in the determination of *Brady* materiality. We have concluded, and so hold, that to be material under *Brady,* undisclosed evidence must be either:

(a) admissible evidence; see *United States ex rel. Wilson v. State,* D.Del., 437 F.Supp. 407 (1977); *United States v. Atkinson,* E.D.N.C., 429 F.Supp. 880, 884 (1977); *United States v. Sedgwick,* D.C. App., 345 A.2d 465, 473 (1975), cert. denied, 425 U.S. 966, 96 S.Ct. 1751, 48 L.Ed.2d 210 (1976); and *Thornton v. State,* Ga.Supr., 238 Ga. 160, 231 S.E.2d 729 (1977), cert. denied, 434 U.S. 1073, 98 S.Ct. 1260, 55 L.Ed.2d 778 (1978); *or*

(b) there must be a showing on the record (trial or post-trial) that it would have, or could have led to admissible evidence. Cf. *Wright v. State,* Del.Supr., 374 A.2d 824, 830 (1977): "No prejudice can result from denial of access to material that is inadmissible and which will not lead to the discovery of admissible evidence." See *United States v. Ahmad,* M.D.Pa., 53 F.R.D. 186 (1971); *United States v. Wigoda,* 7th Cir., 521 F.2d 1221 (1975) and *In re Ferguson,* Calif.Supr., 5 Cal.3d 525, 96 Cal.Rptr. 594, 487 P.2d 1234 (1971).

█ Here, the undisclosed statement was inadmissible and there was no showing on the record that it would have, or could have, led to admissible evidence. Accordingly, we are convinced that timely disclosure of that statement would not have enabled Stokes "to create a reasonable doubt that did not otherwise exist."

It follows that the undisclosed Graham statement was not material to the issue of either guilt or punishment under the rules of *Brady* and *Agurs*; that, therefore, there was no violation of the defendant's *Brady* due process rights in this case.[6]

█ Finally, it should be noted that the State's argument that Graham's statement was not *Brady* material, since it derived from a separate investigation of another offense, is manifestly specious because Graham's statement related to the murder of Powell.

## II.

*The Sixth Amendment Issue*

During the trial, a police detective testified that Thornton had told the police that Stokes had shot Powell. The Trial Judge sustained the defendant's hearsay objection. Nevertheless, in summation the prosecutor said that Thornton's statement was "corroboration". After objection, the Trial Judge instructed the jury that "there is no evidence in the record or from this case dealing with Mr. Thornton's statement, and there is absolutely no evidence that statement implicates Mr. Stokes."

█ We reject the defendant's argument that the prosecutor's question and statement in summation violated Stokes's Sixth Amendment right to confrontation so as to require reversal under *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). The Trial Judge's immediate instructions to the jury were sufficient to cure any harm. Furthermore, any possible error in this regard would be harmless beyond a reasonable doubt, in our view, in the light of the overwhelming evidence of guilt presented by the State (e. g., the defendant's signed statement, his tape recorded confession, and his connection with the murder weapon). *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

**6.** Our conclusion regarding admissibility eliminates the necessity of analyzing the other "factors of materiality". Also, because we have concluded that the Graham statement was not material, we need not address the State's contention that the disclosure of the statement just prior to trial was timely.

### III.

*The Corpus Delicti Issue*

Because there was no evidence of the robbery other than the defendant's confession, the defendant moved for acquittal on the robbery and related weapon-possession charge. The Court noted that "there is no evidence in the record to indicate that Powell was robbed, except the statements of Thornton and Stokes, [and] [i]n this case, . . . the State's case in chief, we have no evidence of Thornton's statement." Nevertheless, the Trial Court denied Stokes's motion for acquittal on the robbery and related weapon charges, stating that "[t]he *corpus delicti* has been established by the State."

There must be some evidence of the *corpus delicti* of a crime, independent of the defendant's confession to support a conviction. See *Johnson v. State,* Del.Supr., 338 A.2d 124 (1975); *Nelson v. State,* Del. Supr., 123 A.2d 859 (1956). In view of the Trial Court's recognition that there was no evidence in the record independent of Stokes's confession to indicate that Powell was robbed, it was plain and reversible error to allow the robbery and associated weapon charges to go to the jury.

Accordingly, we reverse the conviction of the defendant for First Degree Robbery with its accompanying charge of Possession of a Deadly Weapon During the Commission of a Felony. However, finding no other reversible error, we affirm the conviction of the defendant for Murder in the First Degree, First Degree Conspiracy, and one count of Possession of a Deadly Weapon During the Commission of a Felony.

\* \* \* \* \* \*

Affirmed in part; reversed in part; and remanded for further proceedings consistent herewith.