**David AYRES, Defendant Below, Appellant,**

v.

**STATE of Delaware, Plaintiff Below, Appellee.**

Supreme Court of Delaware.

Submitted Sept. 21, 1981.

Decided Oct. 20, 1981.

Raymond J. Otlowski, Asst. Public Defender, Wilmington, for appellant.

Ferris W. Wharton, Deputy Atty. Gen., Dept. of Justice, Wilmington, for appellee.

Before HERRMANN, C. J., DUFFY and HORSEY, JJ.

HORSEY, Justice:

This appeal raises the question of whether the State's delay in making arrangements for expert analysis and testimony concerning physical evidence, qualifying as "Brady" material, constituted unlawful suppression where the evidence was excluded as hearsay in the absence of expert testimony to explain it.

In a jury trial, defendant was convicted of rape, second degree, 11 *Del.C.* § 763, but acquitted of a companion charge of possession of a deadly weapon (a knife) during the commission of a felony (the rape), 11 *Del.C.* § 1447. The indictments were based on the alleged victim's complaint that defendant had forced her at knifepoint to engage in sexual intercourse in his bedroom during an all-night drink and drug party attended by several others at defendant's bachelor's apartment. The victim made the complaint to the police at the urging of a friend sometime after the party had broken up and after the police had been called to the premises in response to a disturbance-of-the-peace complaint made by a third party at defendant's request. Apart from victim's testimony, which defendant denied on the stand, there was no corroborative evidence whatsoever of victim's version of the incident.

Some four months before the trial began, the State was granted a continuance for the specific purpose of obtaining from the FBI in Washington, D.C. an analysis of certain pertinent physical evidence in its possession. The evidence consisted of: pubic hair combings and clippings (apparently from both parties); fingernail scrapings; panties, pillowcase and sheets; and head hair clippings.

Shortly after the continuance was granted, the State sent some, but not all, of the physical evidence to the FBI. For reasons not known, the State did not deliver the balance of physical evidence to the FBI until about one month before trial. Presumably as a consequence of the State's late delivery, the FBI's report of its findings was not delivered to the State until mid-day on the first day of trial; and defendant was not provided with a copy of the report until the morning of the second trial day. The report, though inconclusive in some respects, was generally favorable to defendant. However, the State either failed or was unable to arrange for an FBI representative to testify at the trial regarding the report and the Bureau's findings.

The parties then agreed to stipulate the report into evidence; but the Court refused to admit the report without interpretive testimony from a qualified witness explaining its contents to the jury.

On appeal, defendant raises various grounds for reversal. However, we need not go beyond the ground relating to the exclusion of the FBI report.

In *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), the United States Supreme Court held that, ". . . the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment irrespective of the good faith or bad faith of the prosecution." *Id.* at 87, 83 S.Ct. at 1196–97. Contending that the FBI report was "Brady" material, defendant makes

two arguments for reversible error: (1) that the Trial Court abused its discretion in not admitting exculpatory evidence which the parties agreed should be submitted to the jury; and (2) that the State's conduct amounted to suppression of the report, in violation of defendant's right to due process and a fair trial.

The State denies that the report was "Brady" material; and alternatively contends that even if it came under the "Brady" rule, the State's conduct did not amount to suppression under applicable law. Further, the State argues that the Trial Court clearly did not abuse its discretion in not admitting the report in the absence of a qualified witness to explain its contents.

A trial judge has broad latitude in determining the admissibility of evidence. *Conyers v. State*, Del.Supr., 396 A.2d 157 (1978); *Thompson v. State*, Del.Supr., 399 A.2d 194 (1979); *Young v. State*, Del.Supr., 407 A.2d 517 (1979). Here, the Trial Judge concluded that the report's findings and conclusions required explanation to be understandable. Without such an explanation from a qualified witness, the Court concluded that it would be "very easy for laymen to draw inaccurate inferences." On that basis, the Court ruled the report inadmissible.

■ The report, standing alone, clearly constituted hearsay evidence. While the report contained three negative findings that were favorable to defendant,[1] other portions of the report were found by the Trial Judge to require explanation. (Tests performed on human blood found on victim's panties were described simply as "inconclusive"; a cryptic distinction was made between "human" blood and "menstrual" blood; and "both similarities and differences" were noted in the analysis of defendant's pubic hair samples taken from the bedsheets.) Thus, notwithstanding counsel's willingness to stipulate the report into

evidence, we cannot conclude that the Court abused its discretion in not admitting the report, for the reasons stated above. Defendant's analogy of the report to a recorded statement of an eyewitness to a crime is inapposite. *See State v. Aubuchon*, Mo. Supr., 381 S.W.2d 807 (1964).

■ Turning to defendant's suppression contention, we conclude that the report did constitute "Brady" matter. The report was clearly material to the issue of whether intercourse had occurred. Without the report, the remaining trial evidence was conflicting and equally weighted on the issue. The victim testified that defendant, while holding a knife to her throat, forced her to have sexual intercourse which was consummated. Defendant categorically denied either threatening victim with a knife[2] or engaging in intercourse. Defendant testified that with victim's consent he attempted sexual intercourse but was incapable of completing the act because of his physical condition. The prosecution's remaining witnesses could only recount what the victim had told them sometime after the incident.

The physical evidence that was submitted to the FBI was concededly relevant and material to the issue of whether the victim had been raped. As stated, the report was generally favorable to defendant. Hence, its findings arguably supported defendant's claim of innocence. Thus, the report, if admitted, may well have created a reasonable doubt in the jurors' minds that might not otherwise have existed as to whether there had in fact been penetration and sexual intercourse as victim contended. *See Brady v. Maryland, supra; United States v. Agurs*, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976); *Stokes v. State*, Del. Supr., 402 A.2d 376 (1979). Further, since the evidence was not cumulative, the report's findings may well have been determinative in view of the irreconcilably conflict-

---

1. The report was favorable to defendant in its three findings of: (1) no semen on victim's panties or the bedsheets; (2) no pubic hair of the victim was found in defendant's pubic hair combings; and (3) no pubic hair matching de-

fendant's was found in victim's pubic hair combings.

2. No knife was found during a subsequent search by the police of defendant's apartment.

ing testimony of victim and defendant. We conclude that the report also met the "factors" test laid down by this Court in *Stokes, supra.*

We also conclude that the State's delay in submitting the entire package of physical evidence to the FBI was the probable cause of the late delivery of the report *and* the unavailability of an FBI witness to testify as to its findings. The State contends that its offer of a continuance to defendant (on the eve of trial and before receipt of the report) and defendant's decline of the offer bars assertion of a suppression contention. *See United States v. Joyce,* 7th Cir., 499 F.2d 9 (1974). We consider that to have been a "Hobson's choice" in view of the prior continuance of four months that was granted the State for the express purpose of obtaining an analysis of the State's physical evidence and presumably for arrangements to be made for an expert witness to testify as to the report's findings.

In the context of the facts of this case, we conclude that the State's delayed submission of the evidence for analysis was the responsible cause for both the report delay and the unavailability of an expert to testify concerning the report. Further, we conclude that the State's delay substantially prejudiced defendant's preparation of his defense and thereby constituted an unconstitutional suppression of "Brady" material. *United States v. Baxter,* 9th Cir., 492 F.2d 150, cert. dismissed, 414 U.S. 801, 94 S.Ct. 16, 38 L.Ed.2d 38, reh. den. (1973), cert. denied, 416 U.S. 940, 94 S.Ct. 1945, 40 L.Ed.2d 292 (1974); *Gorham v. Wainwright,* 5th Cir., 588 F.2d 178 (1979). Through the exclusion of the report, the jury was denied evidence that was not only material and favorable to defendant but also of sufficient probative value (due to its objective nature) to create a reasonable doubt that may not have otherwise existed as to defendant's guilt. It follows that defendant was denied his right to a fair trial.

REVERSED.